## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **LSC WIND DOWN, LLC,** *et al.,*[1] | : | **Case No. 17-10124 (KBO)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |
| **UMB BANK, N.A., as Plan Trustee of** | : | |
| **The Limited Creditors' Liquidating Trust,** | : | |
| | : | |
| | : | **Adversary Proceeding** |
| Plaintiff, | : | **No. 19-50272 (KBO)** |
| | : | |
| v. | : | |
| | : | |
| **SUN CAPITAL PARTNERS V, LP;** | : | |
| **SUN MOD FASHIONS IV, LLC;** | : | |
| **SUN MOD FASHIONS V, LLC; and** | : | |
| **HIG SUN PARTNERS, LLC,** | : | |
| | : | |
| Defendants. | : | |

---

## TRUSTEE'S OPENING BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON
## (1) AFFIRMATIVE DEFENSE OF LIMITATIONS, AND
## (2) EXISTENCE OF A PREDICATE CREDITOR UNDER 11 U.S.C. § 544(b)(1)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are LSC Wind Down, LLC f/k/a Limited Stores Company, LLC (6463); LS Wind Down, LLC f/k/a Limited Stores, LLC (0165); and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (6094).

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  NATURE AND STAGE OF PROCEEDINGS ..................................................... 2

III.  SUMMARY OF ARGUMENT ............................................................................ 3

IV.  STATEMENT OF FACTS ................................................................................... 4

    A.  THE DEBTOR'S BUSINESS AND THE TRANSFER. ...................................... 4

    B.  THE PREDICATE CREDITORS ....................................................................... 5

        1.  Arden Jewelry. ...................................................................................... 5

        2.  Kenilworth. ........................................................................................... 8

        3.  One Stop................................................................................................ 10

V.  ARGUMENT ........................................................................................................ 11

    A.  THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SUN CAPITAL'S THIRD AFFIRMATIVE DEFENSE............................... 11

    B.  THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE EXISTENCE OF A PREDICATE CREDITOR FOR ITS § 544(b)(1) CLAIM. ............................................................................................ 14

        1.  Arden Jewelry, Kenilworth, and One Stop Were Not Time-Barred Under the FUFTA's Discovery Rule. ....................................................... 16

        2.  The Predicate Creditor's Claim Need Not Have Existed at the Time of the Transfer. ............................................................................... 19

VI.  CONCLUSION..................................................................................................... 20

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Bakst v. Lester (In re Amelung)*, No. 09-01719,
 2010 WL 1417742 (Bankr. S.D. Fla. Apr. 7, 2010) ........................................................ 13

*Field v. Starr (In re Maui Indus. Loan & Fin. Co.)*,
 454 B.R. 133 (Bankr. D. Haw. 2011) ............................................................................. 15

*Finkel v. Polichuk (In re Polichuk)*, No. 10-0031,
 2010 WL 4878789 (Bankr. E.D. Pa. Nov. 23, 2010).................................................... 13

*FTI Consulting, Inc. v. Joseph and Linda Sweeny (In re Centaur, LLC)*,
 595 B.R. 686 (Bankr. D. Del. 2018) ............................................................................... 11

*Furr v. I.R.S. (In re Pharmacy Distrib. Servs., Inc.)*,
 455 B.R. 817 (Bankr. S.D. Fla. 2011)............................................................................. 13

*In re 160 Royal Palm*, LLC, No. 18-19441-EPK,
 2019 WL 989829 (Bankr. S.D. Fla. Feb. 26, 2019)....................................................... 19

*In re Truong*,
 285 F. App'x 837 (3d Cir. 2008) ..................................................................................... 14

*Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen*,
 920 N.W.2d 356 (Wis. Ct. App. 2018) ........................................................................... 15

*Orr v. Bernstein (In re Bernstein)*,
 259 B.R. 555 (Bankr. D.N.J. 2001) ................................................................................ 13

*Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS),
 2016 WL 1274127 (M.D. Ga. Mar. 31, 2016).................................................................. 15

*Rosania v. Haligas (In re Dry Wall Supply, Inc.)*,
 111 B.R. 933 (D. Colo. 1990) .................................................................................. 12, 13

*Schwab v. Huber (In re Keuhner)*, No. 5-11-00325,
 2011 WL 6820389 (Bankr. M.D. Pa. Dec. 28, 2011) ..................................................... 13

*Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., Inc.*,
 417 F. Supp. 2d 212 (D. Mass. 2006) ............................................................................. 12

*Taylor v. Jones*,
 150 So. 254 (Fla. 1933)..................................................................................................... 19

*Van Dusen v. Barrack,*
        376 U.S. 612 (1964) .......................................................................................................... 1

**Statutes**

11 U.S.C. § 544 ................................................................................................................ passim
11 U.S.C. § 546 ................................................................................................................ passim
11 U.S.C. § 550 ...................................................................................................................... 2
FLA. STAT. ANN. § 726.105 ................................................................................................... 19
FLA. STAT. ANN. § 726.110 ................................................................................................... 16

**Rules**

FED. R. CIV. P. 56(a) ............................................................................................................ 11

Plaintiff UMB Bank, N.A., as Plan Trustee of The Limited Creditors' Liquidating Trust (the "Trustee"), respectfully submits this opening brief in support of the *Trustee's Motion for Partial Summary Judgment on (1) Affirmative Defense of Limitations, and (2) Existence of a Predicate Creditor Under 11 U.S.C. § 544(b)(1)* (the "Motion").

## I.    PRELIMINARY STATEMENT

1.      From the outset of this adversary proceeding, the defendant affiliates of private equity firm Sun Capital Partners (collectively, "Sun Capital") have been fixated on the "vintage" of a $42 million fraudulent transfer made in December 2011 (the "Transfer") that is the subject of the Trustee's actual fraudulent transfer claim brought under 11 U.S.C. § 544(b)(1) and the Florida Uniform Fraudulent Transfer Act (the "FUFTA").[2]  Sun Capital moved to dismiss on limitations grounds, while failing to grasp that section 546(a) is the relevant statute of limitations, that the Trustee stands in the shoes of any creditor under section 544(b)(1), and that the "vintage" of the Transfer poses no obstacle unless every single unsecured creditor somehow should have discovered the Transfer prior to one year before the petition date.  The Court denied Sun Capital's motion to dismiss and issued a written opinion that should have cured Sun Capital's fundamental misunderstanding of the law.  Nevertheless, Sun Capital stubbornly asserted statute of limitations as an affirmative defense in answering the complaint, and then even insisted that the "vintage" of the Transfer somehow compelled a bifurcated scheduling order for discovery.

---

[2] The Trustee pleaded, in the alternative, the FUFTA (Fla. Stat. § 726.101 *et seq.*) or the Ohio Uniform Fraudulent Transfer Act (Ohio Rev. Code § 1336.01 *et seq.*) as the relevant "applicable law" for its section 544(b)(1) claim.  In moving to dismiss, Sun Capital argued that the FUFTA governs the section 544(b)(1) claim.  The Trustee agrees. Moreover, because the venue transfer from Florida to Delaware does not alter the choice-of-law analysis, there is no dispute regarding the applicable law here.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("We conclude, therefore, that . . . where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.").

2.      The time has come to dispose of Sun Capital's misguided theories regarding the "vintage" of the Transfer.  The undisputed facts establish that the Trustee filed its claims within two years of the petition date, meaning the claims are timely under section 546(a).  And the testimony from an initial batch of just three out of over 100 potential predicate creditors unequivocally establishes that not all creditors would have been time-barred from avoiding the Transfer as of the petition date.  Indeed, these victimized creditors did not learn of the Transfer until after the bankruptcy filing, had no pre-petition access to any information that would have revealed the Transfer, and had no reason for concern until the debtor stopped paying their invoices shortly before bankruptcy.  Accordingly, the Trustee now seeks partial summary judgment (1) to defeat Sun Capital's affirmative defense of limitations, and (2) to establish the existence of a predicate creditor for purposes of the section 544(b)(1) claim.  Granting the requested relief will streamline this litigation going forward by narrowing its focus to simply whether the Transfer was an actual fraudulent transfer.

## II.      NATURE AND STAGE OF PROCEEDINGS

3.      The Trustee filed its Original Complaint (the "Complaint") in Sun Capital's home forum, the United States Bankruptcy Court in the Southern District of Florida.  (Ex. A.)  The Complaint seeks: (1) avoidance of the Transfer as an actual fraudulent transfer pursuant to 11 U.S.C. § 544(b) and other applicable law, including the FUFTA; and (2) recovery of the Transfer (or value thereof) from Sun Capital under 11 U.S.C. § 550.

4.      Sun Capital simultaneously moved to transfer venue to this Court and moved to dismiss on limitations grounds.  Venue was transferred to this Court on July 12, 2019.  (D.I. 1.) After a hearing on Sun Capital's motion to dismiss, the Court entered an order (D.I. 18) and written opinion (the "Opinion") (Ex. B, D.I. 17) denying that motion on January 23, 2020.

5.      In its Opinion, the Court concluded that "so long as an underlying state law avoidance claim is not time-barred as of the commencement of a bankruptcy case, a section 544(b)(1) claim may be brought provided that it is commenced within the time period prescribed by section 546(a)." (Ex. B at A029 (gathering cases).)  The Court found that the Trustee complied with section 546(a) because the Complaint was filed within two years of the petition date in accordance with section 546(a)(1)(A).  (*Id.*)  The Court also observed that "the Complaint will be timely if a Predicate Creditor existed as of the Petition Date."  (*Id.*)  The Court ultimately denied Sun Capital's motion to dismiss, stating that predicate creditor issues "are more appropriate for consideration by the Court on a motion for summary judgment."  (*Id.* at A030-31.)

6.      Sun Capital subsequently filed its answer to the Complaint.  (Ex. C, D.I. 20.)  In its answer, Sun Capital asserts an affirmative defense that the Trustee's claims "are barred by the statute of limitations." (*Id.* at A059.)  Sun Capital places such import on this limitations issue that it asked the Court for a bifurcated scheduling order with discovery of predicate creditors to occur prior to any discovery on the merits of the Trustee's claim. (D.I. 24.).  Although the Court rejected that request and entered a standard scheduling order, the parties have now taken two creditor depositions.  Sun Capital's limitations defense is now ripe for partial summary judgment.

### III.    SUMMARY OF ARGUMENT

7.      The Trustee is entitled to partial summary judgment in its favor on Sun Capital's third affirmative defense, that the Trust's claims are time-barred.  As the Court previously found in its Opinion, section 546(a) is the applicable statute of limitations and it permits a section 544(b)(1) claim to be brought within two years of the petition date.  It is undisputed that the Complaint here was filed two years after the petition date, and thus was timely filed.  Accordingly, the Trustee is entitled to partial summary judgment on Sun Capital's third affirmative defense.

DOCS_DE:233256.1 51411/003

8.     Relatedly, the Trustee is also entitled to partial summary judgment on the existence of at least one predicate creditor for its section 544(b)(1) claim.  Section 544(b)(1) permits the Trustee to step into the shoes of any unsecured creditor of the debtor with an unsecured claim who could have avoided a fraudulent transfer under other applicable law, including the FUFTA, as of the petition date.  The undisputed facts set forth herein establish the existence of at least three such creditors.  And despite Sun Capital's protestations to the contrary, the undisputed facts also establish that those predicate creditors would not have been time-barred from avoiding the Transfer under the FUFTA because those creditors had not discovered and reasonably could not have discovered the Transfer prior to one year before the petition date.  Thus, the Trustee is entitled to partial summary judgment on the existence of a predicate creditor, an element to its section 544(b)(1) claim.

## IV.    STATEMENT OF FACTS

### A.    THE DEBTOR'S BUSINESS AND THE TRANSFER.

9.     Limited Stores, LLC ("Limited Stores") operated a women's retail apparel business known as "The Limited."  (Ex. C at A034 (¶ 2) & A036-37 (¶11).)  Limited Stores was 100% owned by Limited Stores Company, LLC ("HoldCo").  (Ex. D at A070-71 (¶ 20) & A096.)  Sun Capital obtained 75% ownership of HoldCo in 2007 and the remaining 25% ownership interest in 2010; thereafter, Sun Capital affiliates Sun Mod Fashions IV, LLC and Sun Mod Fashions V, LLC collectively owned 99.9%, and H.I.G. Sun Partners, LLC owned 0.1% of HoldCo.  (Ex C at A045 (¶ 31); *see also* Ex. D at A070-71; Ex. E at A108.)

10.    On December 20, 2011, Limited Stores transferred $42,158,299 to Sun Capital Partners V, LP (the "Transfer").  (Ex. C at A055 (¶ 59).)

11.    On January 17, 2017 (the "Petition Date"), Limited Stores and related debtors, including HoldCo, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4

(Ex. C at A038 (¶ 16); Bankr. No. 17-10124 [D.I. 1]; Bankr. No. 17-10125 [D.I. 1]; Bankr. No. 17-10126 [D.I. 1].)

12.     The Trustee filed the Complaint on January 17, 2019 (the "Commencement Date"). (Ex. A.)  The Trustee seeks to avoid the Transfer on the basis that it is an actual fraudulent transfer pursuant to 11 U.S.C. § 544(b)(1) and the FUFTA.  (Ex. A at A019-020 (¶¶ 58-68).)  As the Court found in the Opinion, the section 544(b)(1) claim was timely under 11 U.S.C. § 546(a) because it was filed within two years of the Petition Date.  (Ex. B at A029.)

## B.     THE PREDICATE CREDITORS.

13.     As reflected in the claims register, there are hundreds of unsecured creditors of Limited Stores.  But merely one creditor suffices for purposes of the Trustee's section 544(b)(1) claim, and thus the Trustee focused on an initial subset of just three creditors to tee up the instant Motion: (1) Arden Jewelry Mfg. Co ("Arden Jewelry"); (2) Kenilworth Creations, Inc. ("Kenilworth"); and (3) One Stop Facilities Maintenance Corp. ("One Stop").

### 1.     Arden Jewelry.

14.     The parties deposed Arden Jewelry's designated corporate representative, Steven Michael Abrams, on January 28, 2021.  (Ex. F at A192 (8:21-23).)  Mr. Abrams has served as president and owner of Arden Jewelry for 35 years.  (*Id.* at A189 (5:19-25).)  Arden Jewelry is a three-generation family business originally founded by Mr. Abrams' grandfather approximately 83 years ago.  (*Id.* at A193-94 (9:23 to 10:6).)  The Rhode Island-based company has approximately 30 employees.  (*Id.* at A194 (10:11-14).)

15.     Arden Jewelry is in the business of designing, manufacturing, and importing costume jewelry for approximately 20 retail specialty stores, such as Chico's, Express, and Kohl's. (*Id.* at A193-94 (9:23 to 10:10).)  One of Arden Jewelry's customers was Limited Stores.  (*Id.* at A194 (10:20-22).)  Under its arrangement with Limited Stores, the standard practice was for

5

Limited Stores to issue a purchase order, for Arden Jewelry to ship goods, for Arden Jewelry to issue an invoice for the goods that had been shipped to Limited Stores, and then finally for Limited Stores to make payment on that invoice.  (Ex. F at A200-01 (16:16 to 17:9).)

16.    When Limited Stores filed its bankruptcy case in January 2017, dozens of outstanding invoices to Arden Jewelry had not been paid.  (*Id.* at A201 (17:11-22).)  Consequently, Arden Jewelry filed a proof of claim in the amount of $361,386 for unpaid invoices for goods it had sold to Limited Stores.  (Ex. F at A203-04 (19:7 to 20:2); Ex. G.)  The information set forth in the proof of claim, including the amount of the unsecured claim, is correct.  (Ex. F at A203-04 (19:3 to 20:5).)  Arden Jewelry's claim is based on a right to payment by Limited Stores for numerous unpaid invoices for goods sold.  (*Id.* at A205-06 (21:6 to 22:14); Ex. G at A263-323.) The invoices range from August 11, 2016 through October 27, 2016.  (Ex. G at A263-323.)

17.    As a trade creditor, Arden Jewelry had no idea before January 17, 2016—one year prior to the Petition Date—that the Transfer had been made from Limited Stores to its private equity insiders:

> Q.    . . . . Prior to January 17th of 2016, had Arden [Jewelry] discovered The Limited Stores transferred $42 million to Sun Capital Partner V?
> A.    No.
> Q.    Okay.  Had Arden [Jewelry] discovered The Limited Stores transferred that amount to any Sun Capital entity?
> A.    No.
> Q.    Had Arden [Jewelry] discovered The Limited Stores transferred that amount to anyone at all?
> A.    No.
> Q.    Had Arden [Jewelry] discovered The Limited Stores had transferred anything close to $42 million to anyone at all?
> A.    No.

(Ex. F at A208-09 (24:14 to 25:3).)  Nor, as of January 17, 2016, was Arden Jewelry aware of any purported dividends or distributions paid by Limited Stores to any Sun Capital entity or anyone

6

else.  (*Id.* at A209 (25:7-20).)  In fact, Arden Jewelry did not even learn of the Transfer until after

the bankruptcy case was filed.  (*Id.* at A229 (45:9-21).)

      18.     Nor did Arden Jewelry have access to any information that would have enabled it

to discover the Transfer prior to January 17, 2016.  Specifically:

| | |
|---|---|
| Q. | [D]id Arden [Jewelry] have any access to Limited Stores bank records? |
| A. | No. |
| Q. | Did Arden [Jewelry] have any access to Limited Stores board meetings? |
| A. | No. |
| Q. | What about board minutes? |
| A. | No. |
| Q. | What about board presentations? |
| A. | No. |
| Q. | What about written consent[s] signed by Limited Stores ownership group? |
| A. | No. |
| Q. | What about telephone calls with The Limited Stores ownership group? |
| A. | No. |
| Q. | Did Arden [Jewelry] have any access to Limited Stores emails or other communications with its ownership group? |
| A. | No. |
| Q. | Did Arden [Jewelry] have access to any information about dividends paid by Limited Stores? |
| A. | No. |
| Q. | Or distributions paid by Limited Stores? |
| A. | No. |
| Q. | Then how could Arden [Jewelry] have possibly known The Limited Stores paid a $42 million dividend or distribution at any point in time? |
| A. | I never knew. |
| Q. | Could you have reasonably known? |
| A. | No. |
| Q. | And the same question as to Arden [Jewelry]. Could Arden [Jewelry] have reasonably known? |
| A. | No. |

(*Id.* at A210-11 (26:6 to 27:13).)  Moreover, because Arden Jewelry was doing business with

Limited Stores under a purchase-order-and-invoice arrangement as an unsecured trade creditor,

Arden Jewelry did not have access to any other Limited Stores financial information from the

beginning of the relationship in 2013 onward.  (*Id.* at A217-18 (33:24 to 34:17).)  Likewise, Arden

DOCS_DE:233256.1 51411/003

Jewelry did not have any access or contact with any of the "financial people" or "financial management" at Limited Stores.  (*Id.* at A231 (47:10-15).)

19.  Finally, prior to August 2016 at the earliest, Arden Jewelry had no cause for concern.  Arden Jewelry had a generally favorable impression of Limited Stores and its business at the outset of the trade relationship based on its industry contacts (*Id.* at A227-28 (43:20 to 44:8)), a trusted source of information.  (*Id.* at A232 (48:2-6).)  And from the commencement of the commercial relationship until at least until August 2016, Limited Stores paid its bills to Arden Jewelry in a timely fashion and, therefore, Arden Jewelry never had any concerns regarding the financial wherewithal of Limited Stores.  (*Id.* at A221 (37:4-14) & A224 (40:6-9).)

### 2.  **Kenilworth.**

20.  The parties deposed Kenilworth's designated corporate representative, Eric John Soloff, on January 28, 2021.  (Ex. H at A332 (5:14-16).)  Mr. Soloff, who is Kenilworth's Chief Executive Officer, has "basically run the company since 1998" as a second-generation owner.  (*Id.* at A332 (5:17-20), A334 (7:18-25) & A351 (24:17-23).)  Kenilworth is a family business originally founded by Mr. Soloff's mother in 1974.  (*Id.* at A335 (8:2-5).)  Like Arden Jewelry, Kenilworth is a Rhode Island-based fashion jewelry company that designs, supplies, and manufactures jewelry for several national retailers (*id.* at A334 (7:18-25)), such as Chico's, White House Black Market, Express, Ann Taylor, LOFT, and Lane Bryant.  (*Id.* at A347 (20:10-20).)

21.  One of Kenilworth's oldest customers was Limited Stores, a customer stretching back decades to the early 1980s.  (*Id.* at A351 (24:8-13).)  Under the long-standing business arrangement between Kenilworth and Limited Stores, the standard practice was for Limited Stores to issue a purchase order, for Kenilworth to ship goods, for Kenilworth to issue an invoice for the goods that had been shipped to Limited Stores, and then finally for Limited Stores to make payment on that invoice.  (*Id.* at A339 (12:8-20).)  During that multi-decade relationship, Limited

Stores consistently and timely paid the invoices due to Kenilworth, at least prior to 2016.  (*Id.* at A357 (30:3-18).)

22.     When Limited Stores filed for bankruptcy in January 2017, however, several of Kenilworth's outstanding invoices to Limited Stores had not been paid.  (*Id.* at A340 (13:4-7).) As a result, Kenilworth filed a proof of claim in the amount of $1,351,176 associated with unpaid invoices for goods sold by Kenilworth to the Limited Stores, primarily from August 2016 through November 2016.  (*Id.* at A340-42 (13:8 to 15:10) & A370 (43:6-14); Ex. I at A399-836.)  The information set forth in Kenilworth's proof of claim, including the amount of the unsecured claim, is correct.  (Ex. H at A341(14:15-17).)  Kenilworth first became aware that Limited Stores might not pay those outstanding invoices just days prior to the Petition Date.  (*Id.* at A369 at (42:15-23).) As Mr. Soloff testified: "[U]p until that point . . . I really had no idea.  It blindsided us."  (*Id.* at A369 (42:18-23).)

23.     Prior to January 17, 2016, Kenilworth also was wholly unaware of the Transfer, or even that Limited Stores had made any purported distributions or dividends.  (*Id.* at A342 (15:2-8) & A344 (17:2-13).)   Kenilworth could not have reasonably discovered the Transfer, as Kenilworth did not have access to information that might have revealed that the Transfer had been made, such as bank records, board minutes, board presentations, etc.  (*Id.* at A344 (17:19 to 18:12).)  And Kenilworth did not have contact with management at Limited Stores, as accessory vendors like Kenilworth are "usually a very small part of the business" and thus "kind of on the outsides a little bit."  (*Id.* at A360 (33:3-9).)  When asked how Kenilworth possibly could have known about the Transfer, Mr. Soloff testified: "I don't know how we could have known."  (*Id.* at A345 (18:13-18).)

9

3.      **One Stop.**

24.      From approximately 2006 through 2016, One Stop provided janitorial services to Limited Stores at many of its retail locations.  (Ex. J at A839 (¶ 4).)  One Stop submitted invoices for such services to Limited Stores, and Limited Stores paid those invoices in a timely manner until late 2016.  (*Id.*)

25.      As of January 17, 2017, Limited Stores owed $37,136.74 to One Stop with respect to unpaid invoices for janitorial services rendered to Limited Stores.   (*Id.* at A839 (¶ 5).)  Accordingly, One Stop filed a proof of claim asserting an unsecured claim in that amount for unpaid invoices issued beginning in June 2016.  (*Id.* at A839 (¶ 5) & A841-46.)  The information contained in One Stop's proof of claim, including the amount, basis, and nature of the unsecured claim, is correct.  (*Id.* at A839 (¶ 5).)

26.      One Stop first learned of the Transfer in 2020, long after the Petition Date and long after January 17, 2016.  (*Id.* at A840 (¶ 8).)  One Stop could not have reasonably discovered the existence of the Transfer prior to January 17, 2016, given that One Stop did not have access to any of the following information pertaining to Limited Stores:

- Financial statements and/or other financial reporting;

- Bank statements and/or other bank records;

- Board minutes and/or board presentations, written consents signed by Limited Stores' managers and/or members, and communications among manager and/or members; or

- Any other documents or information revealing the existence of the Transfer or any purported dividend or distribution paid by Limited Stores.

(*Id.* at A840 (¶ 9).)

DOCS_DE:233256.1 51411/003

## V.    ARGUMENT

27.    Through the Motion, the Trustee seeks: (a) entry of partial summary judgment against Sun Capital on the affirmative defense that the Trust's claim is time-barred; and (b) entry of partial summary judgment in the Trustee's favor on the existence of at least one predicate creditor, an element of the Trustee's section 544(b)(1) fraudulent transfer claim.

28.    Under Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the moving party establishes the absence of any genuine issue of material fact, the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of material fact. *FTI Consulting, Inc. v. Joseph and Linda Sweeny (In re Centaur, LLC)*, 595 B.R. 686, 691 (Bankr. D. Del. 2018) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

29.    As set forth herein, the undisputed evidence establishes that: (a) the Complaint was timely filed under the applicable statute of limitations, section 546(a); and (b) there is at least one predicate creditor with an allowable, unsecured claim who could have avoided the Transfer as of the Petition Date.  Accordingly, the Trustee is entitled to partial summary judgment on Sun Capital's affirmative defense that the claim is time-barred and on the predicate creditor element of the Trustee's section 544(b)(1) claim.

### A.    THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SUN CAPITAL'S THIRD AFFIRMATIVE DEFENSE.

30.    Sun Capital's third affirmative defense states in full: "Plaintiff's claims are barred by the statute of limitations."  (Ex. C at A059.)  From that lone, thread-bare assertion, it is unclear whether Sun Capital seeks to resurrect its moribund argument about application of section 546(a),

DOCS_DE:233256.1 51411/003

or whether this defense is based on the far-fetched theory that somehow every single one of the Trustee's multitude of potential predicate creditors was time-barred from avoiding the Transfer under the FUFTA as of the Petition Date.  Either way, Sun Capital's defense falls apart and the Court should grant partial summary judgment in the Trustee's favor.

31.     To the extent that Sun Capital's statute of limitations defense is based on section 546(a), the Court has already rejected Sun Capital's position in denying the motion to dismiss.  In the Opinion, the Court observed that "[s]ection 546(a) specifies the time by which a section 544(b)(1) claim must be brought." (Ex. B at A028 (quoting 11 U.S.C. § 546(a)).)  The Court then properly concluded that: "the Plaintiff complied with section 546(a) as the Commencement Date is two years after the Petition Date in accordance with section 546(a)(1)(A)."  (Ex. B at A029.) That same analysis holds true here, as the dates of the Commencement Date and Petition Date, two years apart, are undisputed.

32.     Nor is there any reason whatsoever to revisit the Court's prior analysis.  Indeed, the legal conclusions set forth in the Opinion are amply supported by the statutory text, case law, and policies underpinning the Bankruptcy Code.  First, the Court's interpretation of the juxtaposition between section 544(b)(1) and section 546(a) comports with the pertinent statutory text, as section 546(a) by its plain terms is the applicable statute of limitations for a section 544(b)(1) claim.  *See* 11 U.S.C. § 546(a) ("An action or proceeding under section 544 . . . may not be commenced after . . . 2 years after the entry of the order for relief . . . .")

33.     Second, the great weight of the case law supports the Court's conclusion that, "so long as an underlying state law avoidance claim is not time-barred as of the commencement of a bankruptcy case, a section 544(b)(1) claim may be brought provided that it is commenced within the time periods prescribed by section 546(a)." (Ex. B at A029 (citing *Sears Petroleum & Transp.*

*Corp. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212, 225 (D. Mass. 2006); *Rosania v. Haligas (In re Dry Wall Supply, Inc.)*, 111 B.R. 933, 936 (D. Colo. 1990); *Schwab v. Huber (In re Keuhner)*, No. 5-11-00325, 2011 WL 6820389, at *1 (Bankr. M.D. Pa. Dec. 28, 2011); *Furr v. I.R.S. (In re Pharmacy Distrib. Servs., Inc.)*, 455 B.R. 817, 824-25 (Bankr. S.D. Fla. 2011); *Finkel v. Polichuk (In re Polichuk)*, No. 10-0031, 2010 WL 4878789, at *3 n.9 (Bankr. E.D. Pa. Nov. 23, 2010); *Bakst v. Lester (In re Amelung)*, No. 09-01719, 2010 WL 1417742, at *8 (Bankr. S.D. Fla. Apr. 7, 2010); *Orr v. Bernstein (In re Bernstein)*, 259 B.R. 555, 555-60 (Bankr. D.N.J. 2001)).)

34.    Third, the Court's approach is firmly supported by the underlying policies of Chapter 5, *i.e.,* it "makes sense because it provides time for investigation and encourages value maximization." (Ex. B at A029.) Specifically:

> Section 546(a) in essence gives the trustee some breathing room to determine what claims to assert under § 544. Without this two-year period, a trustee who does not immediately determine what potential claims are available for the recovery of assets may forever be barred from asserting those claims if the statute of limitations expires early in the bankruptcy, or potentially before the trustee is even appointed. Such would contravene the broad powers [that] Congress has granted to the trustee under §§ 544, 547 and 548 of the Code to recover property for the benefit of the estate.

(*Id.* (quoting *Dry Wall Supply*, 111 B.R. at 936-37).) That policy concern is especially pronounced here given that: (a) the Chapter 5 claims are brought by a post-confirmation trustee; (b) the Transfer was not disclosed in the debtor's first-day filings (a curious omission from the description of the debtor's history with Sun Capital);[3] and (c) the Transfer was not readily discoverable by the debtor's trade creditors and service providers such as Arden Jewelry, Kenilworth, and One Stop who only learned of the Transfer after the bankruptcy filing.

---

[3] The first-day declaration described the history of Limited Stores all the way back to 1963, explained that Sun Capital obtained a 75% stake in 2007 and the remaining 25% interest in 2010, and noted that Sun Capital invested $50 million in the business while also arranging for a $75 million credit facility. (Ex. D at A069-70) The Transfer—a $42 million payment to Sun Capital—was conspicuously absent from that description, as was any mention of tens of millions of dollars of other transfers made to Sun Capital affiliates prior to the Transfer.

35.     Accordingly, to the extent that Sun Capital's amorphous statute-of-limitations defense is grounded in section 546(a), the Court should again rule that the Trustee's section 544(b)(1) claim was timely filed under section 546(a) and grant summary judgment in the Trustee's favor on Sun Capital's third affirmative defense.  To the extent that Sun Capital's nebulous statute-of-limitations defense is predicated on the notion that every single potential predicate creditor was time-barred from seeking avoidance under the FUFTA as the Petition Date, the defense is equally without merit for the reasons discussed below.  Either way, the Trustee is entitled to summary judgment on Sun Capital's statute-of-limitations defense.

**B.      THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE EXISTENCE OF A PREDICATE CREDITOR FOR ITS § 544(b)(1) CLAIM.**

36.     The section 544(b)(1) claim allows the Trustee to step into the shoes of Arden Jewelry, Kenilworth, One Stop, or any other unsecured creditor that could have avoided the Transfer as the of the Petition Date.  Specifically, the statute provides that a trustee "may avoid any transfer . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502" of the Bankruptcy Code.  11 U.S.C. § 544(b)(1).  Thus, as the Court observed in the Opinion, this statute "serves as a 'vehicle' through which" a trustee "may, among other things, recover fraudulently transferred assets of a debtor under a state's fraudulent conveyance laws."  (Ex. B at A028 (citing *In re Truong*, 285 F. App'x 837, 839 (3d Cir. 2008).)

37.     Here, it is indisputable that Arden Jewelry, Kenilworth, and One Stop were all unsecured creditors with allowable unsecured claims as of the Petition Date.  Arden Jewelry and Kenilworth were trade creditors that provided goods to Limited Stores under long-standing commercial relationships and were not paid for those goods.  One Stop was an unsecured creditor that provided janitorial services to the Limited Stores pursuant to a decade-long arrangement and was not paid for those services.  All three of these creditors—Arden Jewelry, Kenilworth, and One

14

Stop—timely filed a proof of claim setting forth true and correct information establishing the amount owed. Accordingly, there is no disputed issue of material fact regarding the status of Arden Jewelry, Kenilworth, and One Stop as creditors with allowable unsecured claims.

38. In essence, therefore, Sun Capital's position regarding the purported lack of a predicate creditor for the Trustee's section 544(b)(1) boils down to Sun Capital's grumbles over the "vintage" of the Transfer, and whether Arden Jewelry, Kenilworth, and One Stop (and all other creditors) were time-barred from avoiding the Transfer under the FUFTA as of the Petition Date. Sun Capital's position on this issue has always been a futile avenue of attack, doomed to fail from the start, given that Limited Stores has over 100 unsecured creditors and <u>any</u> single creditor suffices for section 544(b)(1).[4] Indeed, it is unfathomable that dozens upon dozens of creditors of a privately-held retail chain like Limited Stores could somehow have discovered internal payments made to private equity owners like Sun Capital. In any event, now that the Trustee has obtained testimony from Arden Jewelry, Kenilworth, and One Stop, the indisputable facts establish that those creditors at a minimum would not have been time-barred from avoiding the Transfer under

---

[4] Effectively, because "section 544(b) of the Bankruptcy Code puts the trustee in the shoes of each individual creditor who could have avoided the transfers under state law," the "period for the trustee began to run when the *last* creditor could reasonably have discovered the fraudulent nature of a particular transfer. *Field v. Starr (In re Maui Indus. Loan & Fin. Co.)*, 454 B.R. 133, 138 (Bankr. D. Haw. 2011). In other words, Sun Capital cannot prevail on its theory unless it can show that the applicable limitations period would have run against every single creditor prior to the Petition Date. *See, e.g., Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 1274127, at *8 (M.D. Ga. Mar. 31, 2016) (The "Court must take into consideration whether all creditors of the Debtors were able to reasonably discover the alleged fraudulent nature" of the transfers."); *see also Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen*, 920 N.W.2d 356, 371 (Wis. Ct. App. 2018) ("Under bankruptcy law, the existence of a single, 'triggering creditor' with a timely state law claim gives standing…to pursue claims. In this case, creditors' [UFTA] claims are time barred only if they could reasonably have discovered the fraudulent nature of the transfer prior to April 2, 2011. The [defendants] have not shown that this is true as to each creditor—in other words, that every creditor could reasonably have discovered the nature of the transfer by that time and *every creditor's* claim has expired.").

the FUFTA as of the Petition Date (and, therefore, there exists at least one predicate creditor for the Trustee's section 544(b)(1) claim).[5]

## 1.    Arden Jewelry, Kenilworth, and One Stop Were Not Time-Barred Under the FUFTA's Discovery Rule.

39.    Arden Jewelry, Kenilworth, and One Stop would not have been time-barred from avoiding the transfer because the FUFTA includes a discovery rule, or "savings clause," that extends the time period for avoidance of actual fraudulent transfers.  In pertinent part, the FUFTA provides:  "A cause of action with respect to a fraudulent transfer…is extinguished unless action is brought . . . within 1 year after the transfer . . . was or could reasonably have been discovered by the claimant."  FLA. STAT. ANN. § 726.110.  Thus, what Limited Stores' creditors knew or reasonably should have known one year prior to the Petition Date is the relevant inquiry.  If the one-year period was not triggered against Arden Jewelry, Kenilworth, and/or One Stop until after the pivotal date of January 17, 2016, then those creditors still could have avoided the Transfer as of the Petition Date (and thus so can the Trustee under section 544(b)(1)).

40.    Here, the undisputed facts show that the FUFTA discovery rule was not triggered against Arden Jewelry, Kenilworth, or One Stop until long after January 17, 2016.  It is indisputable that none of those creditors knew of the Transfer prior to the Petition Date, let alone prior to the pivotal date of January 17, 2016.  Nor is there a genuine issue of material fact regarding whether Arden Jewelry, Kenilworth, or One Stop could have reasonably discovered the Transfer prior to January 17, 2016.  To the contrary, there is no evidence of any access to information

---

[5] For purposes of the Motion, the Court need not reach the issue of whether the FUFTA's discovery rule is triggered upon mere discovery of the transfer, or whether the discovery rule will not be triggered unless the creditor also discovered or reasonably could have discovered the "fraudulent nature" of the transfer.  Although some lower courts in Florida have suggested that mere discovery of the transfer will suffice, most courts across the country have held that the UFTA's discovery rule is only triggered upon discovery of the "fraudulent nature" of the transfer.  The Florida Supreme Court has not yet addressed the issue, meaning that an *Erie* guess would be required on this point.  For present purposes, however, the Court need not reach the issue because Arden Jewelry, Kenilworth, and One Stop did not discover and could not reasonably have discovered even the existence of the Transfer.

revealing the Transfer, of any reasonable mechanism of discovering the Transfer, or of any duty to inquire.

41.     First, prior to January 17, 2016, the Predicate Creditors did not have access to any information that would have enabled them to discover the Transfer.  They did not have access to any of the following information of Limited Stores:  (a) bank records; (b) board meetings, minutes, presentations, or written consents; (c) internal emails or communications with its ownership group; or (d) any documents or communications concerning purported dividends or distributions.  Nor did they have access to any financial statements, or any of the financial management or finance personnel of Limited Stores.  Finally, there is no evidence that any of the Predicate Creditors had any contractual information rights that somehow would have revealed the Transfer, or any access to any other documents or information that would have revealed the existence of the Transfer.

42.     Second, according to their own testimony, the Predicate Creditors were unaware of any reasonable means of discovering the Transfer.  Arden Jewelry's designated representative testified that he and Arden Jewelry could not have reasonably known of the Transfer.  (Ex. F at A211 (27:5-13).)  When asked how Kenilworth possibly could have known about the Transfer, its designated representative testified: "I don't know how we could have known."  (Ex. H at A345 (18:13-18).)  And the declaration of One Stop's designated representative explains why One Stop could not have reasonably discovered the Transfer given its lack of access to or rights to receive information from Limited Stores.  (Ex. J at A840 (¶ 9).)

43.     Third, given the nature and history of their commercial relationships with the Limited Stores and when their claims arose, there was no reason for the Predicate Creditors to conduct any investigation into possible fraudulent transfers.  Specifically:

- **Each of the Predicate Creditors had enjoyed years of timely payments from Limited Stores with no missed payments prior to late 2016.**  Arden

Jewelry received consistent timely payments on invoices from 2013 until at least 2016, Kenilworth received consistent payments from the 1980s until shortly before the bankruptcy, and One Stop received consistent payments from 2006 until late 2016.

- **Each of the Predicate Creditors' claims did not arise until the latter half of 2016.**  Arden Jewelry's claim is based on goods sold to Limited Stores from August 2016 to October 2016, Kenilworth's claim is based on goods sold from August 2016 through November 2016, and One Stops' claim is based on janitorial services rendered from June 2016 through January 2017.

- **The Predicate Creditors did not have any inkling of Limited Stores' financial problems**.  Arden Jewelry had a generally favorable impression of Limited Stores and its business based on communications with trusted industry contacts.  Kenilworth "had no idea" and was "blindsided" by Limited Stores' problems just days before the bankruptcy filing.  (Ex. H at A369 (42:15-23).)

After many years—and decades in Kenilworth's case—of steady, timely payments from Limited Stores and no known "red flags" of potential financial difficulties, there is no reason why Arden Jewelry, Kenilworth, or One Stop should be expected to have investigated potential fraudulent transfers, at least prior to the time that their respective invoices were first not paid (which was long after January 17, 2016).

44.    Finally, the Predicate Creditors were in no position to forcibly extract confidential information from Limited Stores, even if they had tried to obtain records of the company's internal dealings with its private equity sponsor.  Arden Jewelry and Kenilworth were small, family businesses that merely provided accessories, almost an afterthought to the core apparel business of Limited Stores.  One Stop provided janitorial services to Limited Stores.  There is no evidence or reasonable basis to believe that small, mom-and-pop vendors and a janitorial service provider somehow could have obtained highly confidential information from Limited Stores, such as the history of payments to an affiliate of its private equity owners.  That is especially evident where, as here, Limited Stores—still 100% owned by Sun Capital affiliates as of the Petition Date—was

18

not entirely forthcoming regarding the history of its dealings with Sun Capital even to this Court in its bankruptcy filings.

45.     Accordingly, the FUFTA discovery rule was not triggered by January 17, 2016 against Arden Jewelry, Kenilworth, or One Stop.  As each of those creditors indisputably held an allowable unsecured claim under section 502 as of the Petition Date, the Trustee is entitled to partial summary judgment on the existence of at least one predicate creditor for its section 544(b)(1) claim.

### 2.     The Predicate Creditor's Claim Need Not Have Existed at the Time of the Transfer.

46.     That the claims asserted by Arden Jewelry, Kenilworth, and One Stop arose after the time of the Transfer does not change the foregoing analysis.  Although Sun Capital has contended otherwise during this litigation, the FUFTA expressly provides that future creditors may avoid actual fraudulent transfers made prior to the time the creditors' claims arose.  Tellingly, the pertinent statutory provision, section 726.105, is entitled: "Transfers fraudulent as to present and future creditors."  FLA. STAT. ANN. § 726.105 (emphasis added).  Section 726.105(1) provides the circumstances where a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made."  FLA. STAT. ANN. § 726.105(1) (emphasis added).  Courts apply this provision by its plain terms.  *See In re 160 Royal Palm*, LLC, No. 18-19441-EPK, 2019 WL 989829, at *9 (Bankr. S.D. Fla. Feb. 26, 2019), *aff'd*, No. 9:19-CV-80343, 2019 WL 1560113 (S.D. Fla. Apr. 10, 2019) ("For claims under section 726.105, the creditor need not have been a creditor at the time of the transfer as that provision includes both existing and future creditors from the point of view of the time of transfer.") (emphasis added).  Indeed, that actual fraudulent transfers may be set aside against future creditors has been settled under Florida law for many decades, even prior to enactment of the FUFTA.  *See Taylor v. Jones*, 150 So. 254, 255 (Fla. 1933)

19

("A conveyance may be canceled for fraud whether present or <u>creditors to be</u> were in mind in its making.") (emphasis added).

47.     In short, the statutory text, Florida Supreme Court precedent, and recent bankruptcy court decisions interpreting the FUFTA all make clear that Arden Jewelry, Kenilworth, and One Stop could have avoided the Transfer even on the basis of unpaid invoices for amounts due during the latter half of 2016.  Accordingly, the Court should flatly reject any argument to the contrary raised by Sun Capital in opposing the Motion.

## VI.    CONCLUSION

For the reasons set forth herein and in the Motion, the Trustee respectfully requests that the Court: (a) grant the Motion; (b) enter judgment in the Trustee's favor on Sun Capital's affirmative defense based on the statute of limitations; (c) enter judgment in the Trustee's favor regarding the existence of an unsecured creditor with an allowable claim against Limited Stores whose cause of action to avoid the Transfer under the FUFTA was not time-barred as of the Petition Date; and (d) grant such other relief as is just and proper.

Dated: March 2, 2021                    */s/  James E. O'Neill*
                                        Bradford J. Sandler (#4142)
                                        James E. O'Neil (#4042)
                                        PACHULSKI STANG ZIEHL & JONES LLP
                                        919 N. Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, Delaware 19899 (Courier 19801)
                                        (302) 652-4100 (T)
                                        (302) 652-4400 (F)
                                        Email: bsandler@pszjlaw.com
                                               joneill@pszjlaw.com

                                            -and-

Eric D. Madden (admitted *pro hac vice*)
Gregory S. Schwegmann (admitted *pro hac vice*)
Michael J. Yoder (admitted *pro hac vice*)
Leo B. Oppenheimer (admitted *pro hac vice*)
REID COLLINS & TSAI LLP
1601 Elm Street, Suite 4200
Dallas, Texas 75201
(214) 420-8900 (T)
(214) 420-8909 (F)
emadden@reidcollins.com
gschwegmann@reidcollins.com
myoder@reidcollins.com
loppenheimer@reidcollins.com

*Counsel to UMB Bank, N.A., as Plan Trustee of*
*The Limited Creditors' Liquidating Trust*