# **EXHIBIT E**

*Solicitation Version*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LSC Wind Down, LLC, *et al.*, [1] | ) | Case No. 17-10124 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DISCLOSURE STATEMENT WITH RESPECT TO
MODIFIED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
LSC WIND DOWN, LLC F/K/A LIMITED STORES COMPANY, LLC AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**NOVEMBER 2, 2017**

KLEHR HARRISON HARVEY BRANZBURG LLP

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email:      dpacitti@klehr.com
Email:      myurkewicz@klehr.com

*Counsel for the Debtors and Debtors-in-Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: LSC Wind Down, LLC f/k/a Limited Stores Company, LLC (6463), LS Wind Down, LLC f/k/a Limited Stores, LLC (0165), and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (6094).

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT RELATES TO THE MODIFIED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LSC WIND DOWN, LLC F/K/A LIMITED STORES COMPANY, LLC, LS WIND DOWN, LLC F/K/A LIMITED STORES, LLC, AND TLSGC WIND DOWN, LLC F/K/A THE LIMITED STORES GC, LLC, AND IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION (THE "**SEC**"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF LSC WIND DOWN, LLC F/K/A LIMITED STORES COMPANY, LLC, LS WIND DOWN, LLC F/K/A LIMITED STORES, LLC, AND TLSGC WIND DOWN, LLC F/K/A THE LIMITED STORES GC, LLC SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER

LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASES OF THE DEBTORS, AND FINANCIAL INFORMATION. THE DEBTORS ARE SOLELY RESPONSIBLE FOR ALL STATEMENTS IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS UNLESS OTHERWISE NOTED. ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH INFORMATION IS QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, SUCH DOCUMENTS OR ANY STATUTORY PROVISIONS THAT MAY BE REFERENCED THEREIN.  THE DEBTORS BELIEVE THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, BUT MAKE NO REPRESENTATION WITH RESPECT TO ITS ACCURACY OR COMPLETENESS.

A100

# 1. INTRODUCTION

## 1.1 *Purpose of Disclosure Statement.*

LSC Wind Down, LLC f/k/a Limited Stores Company, LLC, LS Wind Down, LLC f/k/a Limited Stores, LLC, and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (collectively, the **"Debtors"**), provide this Disclosure Statement (the "**Disclosure Statement**") to the Office of the United States Trustee and to all of the Debtors' known Claimholders and Interestholders pursuant to section 1125(b) of Title 11 of the United States Code (the **"Bankruptcy Code"**) for the purpose of soliciting acceptances of the *Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and its Debtor Affiliates* (the **"Plan"**), which has been filed with the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**).  By Order dated November 7, 2017, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under section 1125 of the Bankruptcy Code.

The Debtors strongly urge you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtors' history and operations. The Disclosure Statement also provides information as to alternatives to the Plan.  A copy of the Plan accompanies this Disclosure Statement as a separate document.

**PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS AND FROM MOTIONS AND OTHER PAPERS FILED WITH THE BANKRUPTCY COURT BY THE DEBTORS AND OTHER PARTIES-IN-INTEREST.  ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THEY ARE UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.**

Unless otherwise defined herein, capitalized terms contained in this Disclosure Statement shall have the same meanings as ascribed to them in the Plan.  All capitalized terms used in this Disclosure Statement and not defined herein or in the Plan, but that are defined in the Bankruptcy Code, shall have the respective meanings ascribed to them in the Bankruptcy Code. All capitalized terms used in this Disclosure Statement and not defined herein, in the Plan or in the Bankruptcy Code, but that are defined in the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**" or "**Bankruptcy Rule**"), shall have the respective meanings ascribed to them in the Bankruptcy Rules.  Holders of Claims or Interests receiving this Disclosure Statement should carefully review the Plan in conjunction with their review of this Disclosure Statement.

**PLEASE REVIEW THE PLAN IN ITS ENTIRETY IN DETAIL.**

**NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THEIR ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.  THE**

**DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.**

The purpose of this Disclosure Statement is to provide Claimholders and Interestholders, to the extent they are entitled to vote, with information determined by the Bankruptcy Court to be adequate to enable them to make an informed decision to vote to accept or reject the Plan.

### 1.2    Brief Summary of the Plan

As described in more detail in this Disclosure Statement, during the course of the Debtors' bankruptcy cases, the Debtors sold substantially all of their remaining Estate Assets, which included the Debtors' intellectual property and related assets and remaining inventory. The net proceeds received by the Debtors upon the sale of substantially all of their remaining Estate Assets were used to indefeasibly pay the DIP Facility Claim and Prepetition Term Secured Claim in full. The remaining proceeds of the sales of the Estate Assets, the collection and liquidation of remaining Estate Assets of the Debtors and the proceeds of Third Party Claims will be used to make payments, to the extent of Available Cash, to Holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy Code, including Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6.  To the extent of any Available Cash and the proceeds of Third Party Claims after payment of Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6, the Plan Trustee shall make Pro Rata Distributions to holders of General Unsecured Claims in Class 7 from such sums.

### 1.3    Confirmation of Plan.

1.3.1    **Requirements**.  The requirements for Confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code.  The following summarizes some of the pertinent requirements:

(a)    **Acceptance by Impaired Classes**.  Except to the extent that the cramdown provisions of section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

(b)    **Feasibility.**  The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

(c)    "**Best Interest" Test**.  The Bankruptcy Court must find that the Plan is in the "best interest" of all Claimholders.  To satisfy this requirement, the Bankruptcy Court must determine that each Holder of a Claim against the Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective

5

Date, has a value not less than the amount such holder would receive if the Debtors' property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

    (d) "**Cramdown" Provisions.** Under the circumstances which are set forth in detail in section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of Insiders (as defined in the Bankruptcy Code), if the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes. The Debtors will invoke the "cramdown" provisions of section 1129(b) of the Bankruptcy Code as to holders of Interests since under the Plan, the Class in which Interests reside are deemed to have rejected the Plan. Should any voting Class fail to accept the Plan, the Debtors will also invoke the "cramdown" provision as to such Class.

    1.3.2 *Procedure.* To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "**Confirmation Hearing**"). The Bankruptcy Court has set **December 20, 2017 at 3:00 p.m. Eastern Time**, for the Confirmation Hearing.

    1.3.3 *Objection to Confirmation*. Any party-in-interest may object to Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set **December 13, 2017 at 4:00 p.m. Eastern Time**, as the deadline for filing and serving upon Debtors' counsel, the United States Trustee's Office, and counsel to the Creditors' Committee objections to Confirmation of the Plan. Objections to Confirmation must be filed with the Bankruptcy Court at the following address:

      U.S. Bankruptcy Court for the District of Delaware
      824 Market Street
      Wilmington, Delaware 19801

with a copy served upon counsel to the Debtors:

      Domenic E. Pacitti, Esquire
      Michael Yurkewicz, Esquire
      Klehr Harrison Harvey Branzburg LLP
      919 N. Market Street, Suite 1000
      Wilmington, DE 19801

and a copy served upon the Office of the United States Trustee:

      United States Trustee
      844 King Street, Room 2311
      Lockbox 35
      Wilmington, DE 19801

and a copy served upon counsel to the Creditors' Committee:

6

A103

James S. Carr, Esquire
Kristin S. Elliott, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

- and -

James E. O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

      1.3.4   ***Effect of Confirmation and Effective Date***.  Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, title to all Plan Trust Assets shall be transferred to the Plan Trust.  The Plan Trust shall be established on the Effective Date for the purpose of liquidating the Plan Trust Assets, winding down the remaining affairs of the Debtors, reconciling and objecting to Claims, seeking approval of the settlement of the WARN Action or, if necessary, defending the WARN Action, prosecuting Third Party Claims and making Distributions to holders of Allowed Claims in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Plan Trustee may affect the dissolution of one or more of the Debtors at any time after the Effective Date. Confirmation serves to make the Plan binding upon the Debtors, all Creditors, Interest Holders and other parties-in-interest, regardless of whether they cast a ballot ("**Ballot**") to accept or reject the Plan.

    ***1.4***    ***Voting on the Plan.***

      1.4.1   ***Impaired Claims or Interest***.  Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes "Impaired" by the Plan and receiving distributions or other treatment under the Plan may vote on the Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the holders of such Claims or Interests treated in such Class.  Claimholders not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The Claimholders in any Class that will not receive any payment or distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

      1.4.2   ***Eligibility***.  In order to vote on the Plan, a Claimholders must have timely filed or been assigned a timely filed proof of Claim, unless its Claim is scheduled by the Debtors and is not identified as disputed, unliquidated or contingent on the Debtors' Schedules of Assets and Liabilities (the **"Schedules"**), and an objection or request for estimation of such Claim has not been filed on or before the Solicitation Date as set forth in the Disclosure Statement Approval Order.  Claimholders having a Claim in more than one Class may vote in each Class in which they hold a separate Claim by casting a Ballot in each Class.

7

1.4.3 **Binding Effect**. Whether a Claimholder votes on the Plan or not, such Person will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a Claimholder will not be included in the vote: (i) for purposes of accepting or rejecting the Plan; or (ii) for purposes of determining the number of Persons voting on the Plan.

1.4.4 **Procedure**. Members of Classes 3, 5, 6 and 7 may vote to accept or reject the Plan. Classes 1, 2, and 4 are not Impaired by the Plan and are deemed, therefore, to accept the Plan. Classes 8 and 9 are Impaired by the Plan and are deemed to have rejected the Plan because the Claims in Class 8 and Interests in Class 9 will receive no distributions under the Plan. In order for your vote to count, you must complete, date, sign and properly mail the enclosed Ballot (please note that envelopes have been included with the Ballot) to:

> if by regular mail:
>
> Donlin, Recano & Company, Inc.
> Re: LSC Wind Down, LLC, *et al*.
> Attn: Voting Department
> P.O. Box 192016
> Blythebourne Station, Brooklyn, NY 11219
>
> if by overnight delivery:
>
> Donlin, Recano & Company, Inc.
> Re: LSC Wind Down, LLC, *et al*.
> Attn: Voting Department
> 6201 15th Ave.
> Brooklyn, NY 11219

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by mail or overnight delivery by Donlin, Recano & Co., Inc. (the **"Balloting Agent"**) at the address set forth above on or before **4:00 p.m. Eastern Time on December 13, 2017**. Once you have delivered your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing.

The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

(i)      any Ballot received after the Voting Deadline;

(ii)     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(iii)    any Ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

8

(iv)　　any Ballot cast for a Claim identified in the Schedules as unliquidated, contingent, or disputed for which no proof of claim was timely filed;

(v)　　any Ballot cast for a Claim for which an objection or request for estimation has been filed on or before the Solicitation Date as set forth in the Disclosure Statement Approval Order;

(vi)　　any unsigned Ballot or Ballot that does not contain an original signature;

(vii)　　any Ballot transmitted to the Balloting Agent by facsimile or other means not specifically approved in the Disclosure Statement Approval Order;

(viii)　　any Ballot that is otherwise properly completed, executed and timely returned, but does not indicate a vote to accept or reject the Plan or that indicates a vote to both accept and reject the Plan.

The following types of Ballots <u>will be</u> counted in determining whether the Plan has been accepted or rejected: whenever a creditor casts more than one Ballot voting the same claim(s) before the Voting Deadline, the last Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent, and thus, to supersede any prior Ballots.

### 1.5　　*Acceptance of the Plan.*

1.5.1　　***Claimholder Acceptance***.  As a Claimholder, your acceptance of the Plan is important.  In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code.  At least one impaired Class of Creditors, excluding the votes of Insiders, must actually vote to accept the Plan.  You are urged to complete, date, sign and promptly mail the enclosed Ballot.  Please be sure to complete the Ballot properly and legibly identify the exact amount of your Claim and the name of the Claimholder.

1.5.2　　***Cramdown Election***.  If all Classes do not accept the Plan, but at least one Impaired Class votes to accept the Plan, excluding the votes of Insiders, the Debtors may attempt to invoke the "cramdown" provisions of the Bankruptcy Code.  Cramdown may be an available remedy, because the Debtors believe that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

### 1.6　　*Sources of Information.*

The information contained in this Disclosure Statement has been obtained from the Debtors' books and records and from motions and other papers filed with the Bankruptcy Court by the Debtors and other parties-in-interest.  Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof.  Any

PHIL1 6590302v.1

value given as to the Estate Assets of the Debtors is based upon an estimation of such value. You are strongly urged to consult with your financial and legal advisors to understand fully the Plan and Disclosure Statement.

The Debtors, after consultation with counsel for the Creditors Committee, have also incorporated proposed changes and additions to the Disclosure Statement suggested by the Creditors Committee. Notwithstanding the incorporation of the Committee' suggested changes, the Committee takes issue with the releases set forth in sections 9.3 and 9.4 of the Plan as described in section 2.3.8 herein.

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits. If any conflicts exist between the Plan and Disclosure Statement, the terms of the Plan shall control.

### 1.7    Additional Information.

Should you have any questions regarding the Plan or this Disclosure Statement, or require clarification of any information presented herein, please contact:

> Domenic E. Pacitti, Esquire
> Michael Yurkewicz, Esquire
> Klehr Harrison Harvey Branzburg LLP
> 919 Market Street, Suite 1000
> Wilmington, DE 19801
> Telephone: (302) 426-1189

## 2.    THE DEBTORS

### 2.1    Description of the Debtors.

On January 17, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Each Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 18, 2017, the Bankruptcy Court entered an order providing for the joint administration of the Debtors' Chapter 11 cases.

The Debtors were a multi-channel retailing company and operated under the name "The Limited," which specialized in the sale of women's clothing. Founded in 1963 as a single store in Upper Arlington, Ohio, the Debtors focused on selling women's sportswear at moderate prices, and it enjoyed quick success. The Debtors expanded over the past five decades to become a household name throughout the United States for women's apparel. In its early days, The Limited marketed to the baby-boomer generation, offering casual sportswear and adding career clothing when the baby-boomers entered the workforce. In 1969, The Limited business, then

comprising six stores, went public as The Limited, Inc. (now L Brands, Inc. - "L Brands"). By 1976, there were 100 The Limited stores.

Over the next several decades, The Limited pioneered vertically integrated specialty retailing, where it controlled every element of the process, including design, production, marketing, selling, and customer service. Through this strategy, The Limited was able to inexpensively produce goods and quickly respond to fashion trends by utilizing rapid response inventory and distribution strategies. The Limited grew in the 1980s by identifying popular fashion trends that it could then deliver at lower prices. By 1985, The Limited had carved out a 5 percent market share of the women's apparel market in the United States.

In 1980, L Brands expanded by launching Limited Express, a younger, more fashion-forward store. Over the next decade, L Brands expanded by acquiring or launching a number of other companies, including Victoria's Secret (a brand specializing in intimate apparel), Lane Bryant (a retailer specializing in plus-size women's clothing), Lerner New York (a budget women's clothing chain), Henri Bendel (an upscale women's department store), Limited Too (a "tween" young women's retailer), and Abercrombie & Fitch (a casual sportswear retailer). This continued in the 1990s with Structure, later branded as Express Men (a store specializing in contemporary clothing for younger men at a moderate price) and Cacique (a women's intimates brand). In addition, L Brands acquired a majority interest in Galyan's Trading Company, a sporting goods and outdoor apparel company, and also launched White Barn Candle Company and Bath & Body Works.

In 2007, certain affiliates of Sun Capital Partners, Inc. ("Sun") acquired a 75 percent interest in The Limited from L Brands (and purchased the remaining 25 percent from L Brands in 2010), leaving the majority of the other brands acquired by L Brands over the years behind in operations wholly separate from those of The Limited. Sun subsequently invested $50 million into the business and the Debtors also arranged a $75 million credit facility to, among other things, provide capital to reenergize their brand and build a long-term platform for growth. Under Sun's ownership, the Debtors expanded their e-commerce business, increased their use of email, and developed a social media presence

At its peak, the Debtors operated approximately 750 brick and mortar retail store locations in the United States, but in recent years the Debtors' operations comprised approximately 250 retail locations across 42 states—primarily in leased mall-based locations—as well as an e-commerce channel, which was accessible through the Debtors' website at www.TheLimited.com.

### 2.2     The Debtors' Operations and Financial Difficulties.

#### 2.2.1     *Corporate Structure.*

LSC Wind Down, LLC f/k/a Limited Stores Company, LLC ("LSC"), is the direct or indirect parent of the other Debtor entities. LSC holds 100% of the membership interests in LS Wind Down, LLC f/k/a Limited Stores, LLC (0165) ("LS") and LS holds 100% of the membership interests in TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC.

11

### 2.2.2 *The Debtors' Debt Structure.*

As of the Petition Date, the Debtors had consolidated outstanding funded debt obligations in the aggregate principal amount of approximately $13.4 million, primarily consisting of the Prepetition Term Secured Credit Facility (described below). Historically, the Debtors also had outstanding obligations pursuant to a Prepetition Revolving Secured Credit Facility (described below), which were satisfied shortly before commencing these chapter 11 cases.

Limited Stores, LLC, as lead borrower, The Limited Stores GC, LLC, as borrower, Limited Stores Company, LLC as facility guarantor, Bank of America, N.A. as administrative agent and collateral agent, certain lenders from time to time, and Banc of America Securities LLC, as lead arranger and bookrunner, were parties to that certain Credit Agreement, dated as of August 24, 2007 (as amended, amended and restated, supplemented, or otherwise modified, refinanced, or replaced from time to time prior to the Petition Date, the "**Prepetition Revolving Secured Credit Agreement**"). The Prepetition Revolving Secured Credit Agreement provided for a senior secured revolving credit facility (the "**Prepetition Revolving Secured Credit Facility**") in an amount of up to $50 million, subject to certain terms and conditions. Obligations under the Prepetition Revolving Secured Credit Facility were secured by a first priority lien on substantially all of the Debtors' assets. Pursuant to the terms of that certain Payoff Letter, dated as of January 4, 2017 (the "**Payoff Letter**"), all prepetition obligations owed by the Debtors under the Prepetition Revolving Secured Credit Agreement were repaid in full as set forth therein. Thus, as of the Petition Date, no amounts remained outstanding under the Prepetition Revolving Secured Credit Facility.

Incidental to the satisfaction of all other prepetition obligations owed by the Debtors under the Prepetition Revolving Secured Credit Agreement, and in connection with the execution of the Payoff Letter, the Debtors cash collateralized outstanding letters of credit issued pursuant to the Prepetition Revolving Secured Credit Agreement and funded an indemnity reserve required under the Prepetition Revolving Secured Credit Agreement by depositing approximately $1,127,560 (the "**BofA Cash Collateral**") in that certain bank account ending in –0010 maintained with Bank of America, N.A., and subject to a security interest granted to Bank of America, N.A. As a result, Bank of America, N.A. retained a first priority lien on the BofA Cash Collateral in connection with any obligations that may arise on account of such outstanding letters of credit to secure the Debtors' workers compensation program obligations to Liberty Mutual Insurance Company and reserves, including any draws thereon. Subsequently, after payment of fees and expenses, including letter of credit fees, Bank of America, N.A. released $854,130.00 of the BofA Cash Collateral to Liberty Mutual Insurance Company, who has retained $692,000.00 of this amount to serve as cash collateral for Debtors' workers compensation program obligations to Liberty Mutual Insurance Company, and the balance of the BofA Cash Collateral to the Debtors.

Limited Stores, LLC, as lead borrower, The Limited Stores GC, LLC, as borrower, Limited Stores Company, LLC as facility guarantor, Cerberus Business Finance, LLC, as administrative agent and collateral agent (in such capacity, the "**Prepetition Term Secured Agent**"), and certain lenders from time to time are parties to that certain Term Loan Agreement (the "**Prepetition Term Secured Lenders**"), dated as of December 20, 2011, (as amended,

amended and restated, supplemented, or otherwise modified, refinanced, or replaced from time to time prior to the Petition Date, the **"Prepetition Term Secured Credit Agreement"**). The aggregate Prepetition Term Secured Credit Agreement commitment was $35 million, subject to certain terms and conditions.  Obligations under the Prepetition Term Secured Credit Agreement were secured by a first priority lien (formerly a second priority lien prior to execution of the Payoff Letter) on substantially all of the Debtors' assets, including cash collateral and the assets that are the subject of the Sale.  As of the Petition Date, approximately $13.4 million in principal amount remained outstanding under the Prepetition Term Secured Credit Agreement.

### 2.2.3    *Events Leading to the Filings.*

Despite years of popularity, the Debtors, like the rest of the retail industry, faced a challenging commercial environment over the last several years, brought on by increased competition, particularly with regard to large fast fashion retailers, and the shift away from shopping at brick and mortar stores.  The increase in online shopping and decrease in mall traffic particularly affected mall-based retailers, such as the Debtors, who maintained significant rent and payroll obligations to operate their brick and mortar stores, despite the decreasing sales in those locations.   Given the Debtors' substantial brick and mortar presence, and the accompanying expenses associated therewith, the Debtors' business was heavily dependent on consumer traffic at its mall-based locations, and resulting sales conversion, to meet their sales and profitability targets.  The combination of the above factors, and others plaguing the retail industry as a whole, contributed to the Debtors falling short of their targeted sales and profitability performance, and contributed to increasing operational losses.

Specifically, and stemming from an 8.3% decrease in mall traffic from 2015 through November 2016, the Debtors' sales dropped 15.6% in stores and 8.1% overall,, 7.9% below the company's 2016 projections.  As a direct result, the company's EBITDA declined approximately 93% from 2015 to 2016, 95% below the company's 2016 projections.

As a result of the decreased operating performance described above, the Debtors were unable to comply with various covenants in their debt documents, including the Term Loan Agreement and Prepetition Secured Credit Agreement.  Consequently, the Debtors entered into various amendments to the Term Loan Agreement over the course of 2015 and 2016, including the fourth, fifth, sixth, and seventh amendments to the Term Loan Agreement, dated March 11, 2015, February 24, 2016, August 25, 2016, and November 11, 2016, respectively.  The Debtors also entered into amendments to the Prepetition Secured Credit Agreement during 2015 and 2016, including the fourth and fifth amendments to the Credit Agreement, dated May 27, 2015, and August, 26, 2016, respectively.

These events placed significant strain on the Debtors' business and liquidity, ultimately necessitating these chapter 11 cases to effectuate an orderly and efficient liquidation and wind down process.

### 2.2.4    *The Debtors' Solicitation and Marketing Efforts.*

In light of the broader market downturn and the Debtors' declining financial performance, in September 2016 the Debtors elected to revisit the potential to monetize their

13

A110

intellectual property—a concept they had first explored in mid-2015.  In a marketing process led by Guggenheim Securities, LLC ("**Guggenheim**"), the Debtors thoroughly marketed all of their assets, including their intellectual property, over the ensuing nearly five months.  Although the Debtors believed at the time, and continue to believe now, that selling or otherwise monetizing the intellectual property was the most likely path to maximizing the value of the Debtors' assets for the benefit of their stakeholders, the Debtors also solicited proposals from potentially interested parties for the sale of the Debtors' entire business.  Despite the Debtors' best efforts and anticipated potential transactions, a going concern transaction involving the Debtors' brick and mortar business ultimately could not be realized.  Subsequently, the written indications of interest the Debtors received generally contemplated the liquidation of the Debtors' existing inventory coupled with a separate sale of their intellectual property and e-commerce assets.

As a result, the Debtors, in consultation with their advisors, determined that a pre-filing liquidation of the Debtors' inventory, coupled with a separate sale of the Debtors' intellectual property and e-commerce assets, was the best and most efficient alternative to maximize the value of the Debtors' estates.

With respect to the inventory liquidation, the Debtors solicited proposals in early-December from various entities that specialize in conducting liquidation sales of retail inventory, some of whom had previously partnered with parties interested in the Debtors' intellectual property assets.  After reviewing the proposals they received, on December 12, 2016, the Debtors engaged Hilco to assist with the liquidation of their existing brick and mortar store inventory.  With Hilco's assistance, the Debtors commenced liquidation sales in their brick and mortar stores on December 14, 2016.  The pace of these sales exceeded the Debtors' expectations, and by January 8, 2017, the Debtors had sold through substantially all of their brick and mortar inventory, and had ceased operations at, and vacated the premises of all stores shortly thereafter.  In addition, prior to the Petition Date, the Debtors ceased operating their e-commerce business.

Contemporaneously with the engagement of Hilco, the Debtors continued their marketing process with respect to their intellectual property and e-commerce assets.  The Debtors received several written, non-binding indications of interest for their intellectual property and related e-commerce assets.  Of those, two parties entered into formal asset purchase agreement negotiations with the Debtors.  After several weeks of negotiations and extensive due diligence by the parties, the process culminated in a bidding contest between those parties, and Limited IP Acquisition LLC ultimately prevailed as the successful bidder and entered into an asset purchase agreement prepetition for the Debtors' intellectual property and related assets, subject to higher and better offers through a section 363 sale process.  Shortly thereafter, the Debtors commenced these chapter 11 cases.

### 2.3    *The Debtors' Bankruptcy Proceedings.*

2.3.1    *Employment of Professionals*.   The Debtors requested and obtained authority to employ the following professionals:  (i) Klehr Harrison Harvey Branzburg LLP as counsel; (ii) Timothy D. Boates of RAS Management Advisors, LLC as Chief Restructuring Officer; and (iii) Guggenheim Securities, LLC as investment banker.

14

A111

2.3.2  **DIP Financing/Debtors' Use of Cash Collateral**.  Cerberus Business Finance LLC in its capacity as DIP Agent (**"DIP Agent"**) for various lenders (the **"DIP Lenders"**) under the Senior Secured and Superpriority Debtor-in-Possession Credit Agreement governing the DIP Facility, date as of January 18, 2017 among the Debtors, the DIP Agent and the DIP Lenders (as amended, restated, supplemented or otherwise modified from time to time) (the **"DIP Facility Credit Agreement"**) agreed to allow the Debtors to use Cash Collateral and to provide the Debtors with a $6.0 million senior-secured debtor in possession credit facility (the **"DIP Facility"**).  Although the Debtors, through their advisors, searched for alternative financing arrangements, the Debtors were unable to find any alternatives.  The Bankruptcy Court approved the DIP Facility by final order entered on February 16, 2017 [Docket No. 233] (the **"DIP Order"**).  Among other things, the DIP Order established deadlines for parties in interest to file challenges to the claims and liens of the Prepetition Term Secured Lenders.  The Challenge Period (defined in the DIP Order) has expired and was resolved pursuant to the *Stipulation (I) Resolving Committee's Challenge Rights Under Final DIP Order; and (II) Releasing Funds Escrowed For the Benefit of the DIP Agent and the Pre-Petition Agent* [Docket No. 428]

To implement its proposed sale processes and continue to retain and inspire confidence in its business partners, access to liquidity was critical.  The authorization to use Cash Collateral and the DIP Facility provided liquidity that the Debtors believed was necessary to conclude the sale processes on an expedited basis and wind down the Debtors' affairs.

2.3.3  **The Creditors' Committee**.  On January 24, 2017, the Office of the United States Trustee appointed an official committee of the Debtors' unsecured creditors (the **"Creditors' Committee"**) pursuant to section 1102(a) of the Bankruptcy Code.  The Creditors' Committee consists of five of the Debtors' largest unsecured creditors: LF Centennial PTE LTD; LLS Freight/aka Mast Logistics Services, Inc.; Tru Fragrance & Beauty LLC; Simon Property Group, Inc.; and GGP Limited Partnership.  The CIT Group/Commercial Services, Inc. is also an *ex officio* member of the Creditors' Committee. The Creditors' Committee retained (i) Kelley Drye & Warren LLP and Pachulski Stang Ziehl & Jones LLP, as lead and local co-counsel respectively, and (ii) CBIZ Accounting, Tax & Advisory of New York, LLC as financial advisor.

2.3.4  **The Sale of Substantially All of the Remaining Estate Assets**.  The Debtors determined that the best method to realize value was to pursue a section 363 sale on an expedited basis for the Debtors intellectual property and related assets and to sell remaining inventory and miscellaneous assets.

On February 23, 2017 the Court entered the *Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (B) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts; and (D) Granting Related Relief* [Docket No. 276] (the "**IP Asset Sale Order**") approving the sale of the Debtors' intellectual property and related assets to Limited IP Acquisition LLP for a purchase price of $26.75 million. The Debtors closed the sale under the IP Asset Sale Order on February 24, 2017 and a portion of the cash proceeds of the sale was used to repay the DIP Facility and the balance due under the Prepetition Term Secured Credit Facility.

15

A112

On March 8, 2017, the Court entered an order approving the sale of excess inventory for $875,124. In addition, pursuant to the *Order Establishing Procedures for De Minimis Asset Transactions*, the Debtors have also sold certain furniture, fixtures, and equipment for approximately $291,670.

2.3.5    ***Schedules and Bar Date***.  On February 10, 2017, the Debtors filed their schedules of assets and liabilities and statements of financial affairs. On February 16, 2017, the Court established April 5, 2017 as the Bar Date for prepetition creditors, including creditors with Claims arising under section 503(b)(9) of the Bankruptcy Code, to file proofs of claim and July 17, 2017 as the Bar Date for governmental units to file proofs of claim.

2.3.6    ***WARN Action***.  On the Petition Date, Kaitlin O'Rourke, on behalf of herself and all others similarly situated, filed a complaint bearing adversary proceeding number 17-50005 against the Debtors based on the Debtors' purported violation of the Worker Adjustment and Retraining Notification Act. The WARN Action was brought by approximately 248 former employees and seeks damages in the amount of 60 days' pay and ERISA benefits due to the Debtors' purported failure to give at least 60 days' advance written notice of termination. The Plaintiffs' in the WARN Action asserted damages in excess of $2,300,000, of which Priority WARN Claims of approximately $1,600,000 were asserted.

On March 23, 2017, the Debtors filed an Answer and Affirmative Defenses (the **"Answer"**) in which the Debtors denied the claims set forth in the Complaint.  In the Answer, the Debtors asserted, among other defenses, the "faltering company" and "unforeseeable business circumstances" exceptions to the WARN Act and denied the alleged WARN Act violations.  After the filing of the Answer, the Plaintiffs in the WARN Action, the Debtors and the Creditors' Committee engaged in informal discovery and lengthy settlement discussions that ultimately resulted in a settlement of the WARN Action pursuant to a Settlement Agreement (the **"Settlement Agreement"**).  The Debtors in consultation with the Creditors' Committee believe that a trial on the merits of the WARN Action would require both sides to engage in extensive discovery at significant expense, with inherently uncertain results at trial.  In light of these factors, the Debtors in consultation with the Creditors' Committee determined that the terms of the settlement, set forth in the Settlement Agreement, are well within the range of reasonableness.

The Settlement Agreement will be the subject of a separate motion under Bankruptcy Rule 9019 and provides that as soon as practicable on or after the fifth business day following the later of the Settlement Effective Date and the Plan Effective Date (as defined in the Settlement Agreement), the Plan Trustee shall make the Settlement payment of $810,625.00 (**"Settlement Payment"**) to a Qualified Settlement Fund established for the WARN Action, which shall be called *O'Rourke v. Limited Stores, LLC QSF*.   Class counsel in the WARN Action shall retain a third party settlement administrator (the **"Settlement Administrator"**) to distribute the Settlement Payment as set forth in the Settlement Agreement and further manage all applicable tax withholdings and reporting.   The Settlement Payment is inclusive of all amounts payable by the Plan Trustee in this settlement and compromise, including, without limitation, attorneys' fees and costs, the Class Representative Service Payment (as defined in the Settlement Agreement), and the costs of notice and administration of the settlement.

16

A113

2.3.7   ***Pending Litigation against Comenity Bank***. On June 14, 2017, the Debtors filed a complaint bearing adversary proceeding number 17-50558 against Comenity Bank f/k/a World Financial Network Bank ("**Comenity**"), the administrator of the Debtors' private label credit card program. The Comenity Action seeks the return of over $2 million in funds that Comenity purportedly collected and unlawfully refused to turn over to the Debtors. The Complaint further seeks to subordinate, disallow, and recharacterize Comenity's partially secured proof of claim in the amount of $27,421,894.  On July 13, 2017, Comenity filed and answer with affirmative defenses to the complaint.  On August 1, 2017, the Court entered an order scheduling the mediation of the Comenity Action, as modified or amended (the *"Scheduling Order").*  Pursuant to the Scheduling Order, the Debtors, Committee, and Comenity are currently scheduled to mediate the Comenity Action on January 30, 2018

2.3.8   ***Potential Claims against the Debtors' Officers, Directors, Other Parties and the Releases under Sections 9.3 and 9.4 of the Plan***.  The Creditors' Committee has informed the Debtors that the Creditors' Committee believes that certain claims may exist against the Debtors' officers and directors and potentially other parties that would be subject to the Third Party Claims (if not otherwise settled or released under the Plan).  The propriety of the Releases set forth in Sections 9.3 and 9.4 of the Plan has been raised by both the Creditors' Committee and the UST.  In particular, the Creditors' Committee has informed the Debtors that these parties should not be covered by the Releases in Sections 9.3 and 9.4 of the Plan under controlling case law in this Circuit.  The Debtors, Creditors' Committee and counsel for certain of the potential defendants of these Third Party Claims have had, and will continue to have, discussions of these potential Third Party Claims and the propriety of the Releases under Federal Rule of Evidence 408. The rights of all parties with standing, including the Creditors' Committee, the UST and the Debtors, with respect to the propriety of the Releases set forth in Sections 9.3 and 9.4 of the Plan are preserved and reserved until the Confirmation Hearing.

### 2.4   *Claims Against the Debtors.*

2.4.1   ***Administrative Claims – Substantial Contribution Claims.***  As of the date of this Disclosure Statement there have been no Administrative Claims - Substantial Contribution Claims filed against the Debtors.  The Debtors estimate that a maximum of approximately $0.00 in Administrative Substantial Contribution Claims will be allowed and remain unpaid as of the Effective Date of the Plan.

2.4.2   ***Administrative Claims - 503(b)(9) Claims.***  The amount of Administrative Claims – 503(b)(9) Claims filed against the Debtors to date is approximately $22,681.13.  The Debtors estimate that a maximum of approximately $0.00 in Administrative 503(b)(9) Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.4.3   ***Administrative Claims – Tax Claims.***  The amount of Administrative Claims – Tax Claims filed against the Debtors is approximately $1,202,240.47.  The Debtors estimate that a maximum of approximately $0.00 in Administrative Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

PHIL1 6590302v.1

2.4.4 **_Priority Tax Claims._** The Debtors have scheduled $0.00 for Priority Tax Claims and the amount of Priority Tax Claims filed against the Debtors to date is approximately $14,194,053.10. Many Priority Tax Claims filed against the Debtors are duplicative, erroneously classified, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Trustee. The Debtors estimate that a maximum of approximately $1,306,517.63 in Priority Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.4.5 **_Liberty Mutual Claim._** The Debtors have scheduled $767.00 for the Liberty Mutual Claim and the amount of the Liberty Mutual Claim filed against the Debtors to date is approximately $576,185.00. The Debtors estimate that a maximum of approximately $576,185.00 for the Liberty Mutual Claim will be allowed and unpaid as of the Effective Date of the Plan, for which Liberty Mutual is holding cash collateral in the approximate amount of $692,000.00.

2.4.6 **_Miscellaneous Secured Claims._** The Debtors have scheduled $1,668.83 for Miscellaneous Secured Claims and the amount of Miscellaneous Secured Claims filed against the Debtors to date is approximately $1,496,621.34. Many Miscellaneous Secured Claims filed against the Debtors are duplicative, erroneously classified, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Trustee. The Debtors estimate that a maximum of approximately $0.00 in Miscellaneous Secured Claims will be allowed and unpaid as of the Effective Date of the Plan. Therefore, the Debtors do not anticipate that there will be any Deficiency Claims.

2.4.7 **_Priority WARN Claims_**. The Debtors have scheduled an unknown amount for Priority WARN Claims and the amount of the Priority WARN Claims asserted in the WARN Action is approximately $1,600,000.00. The Debtors estimate that a maximum of approximately $810,625.00 in Priority WARN Claims will be allowed and unpaid as of the Effective Date of the Plan pursuant to the Settlement Agreement with the Holders of Priority WARN Claims described in Section 2.3.6 herein.

2.4.8 **_Priority Non-Tax Claims._** The Debtors have scheduled $151,310.50 for Priority Non-Tax Claims and the amount of Priority Non-Tax Claims filed against the Debtors to date is approximately $1,856,000.00. Many Priority Non-Tax Claims filed against the Debtors are duplicative, erroneously classified, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Trustee. The Debtors estimate that a maximum of approximately $46,997.30 in Priority Non-Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.4.9 **_General Unsecured Claims_**. The Debtors' Schedules reflect General Unsecured Claims against the Debtors in the approximate aggregate amount of approximately $64,016,494.54. The amount of General Unsecured Claims filed against the Debtors is approximately $304,749,852.86. Many General Unsecured Claims filed against the Debtors are duplicative, erroneously classified, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Trustee. The Debtors

18

A115

estimate that a maximum of approximately $153,409,152.64 in General Unsecured Claims could be allowed.

2.4.10 ***Subordinated Claims***. The Debtors have scheduled $0.00 for Subordinated Claims. The Debtors presently are unable to estimate the amount of Claims that will be subordinated.

## 3.    SUMMARY OF THE PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTING THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST.

### 3.1    *In General.*

The Plan is proposed by the Debtors as consolidated entities. The Allowed Claims of Claimholders will be paid in accordance with priorities set forth in the Bankruptcy Code, a structure that the Debtors believe will produce a fundamentally equitable outcome for all creditors.

3.1.1 ***Estate Assets***. On the Effective Date, the Estate Assets not sold pursuant to the Asset Sale and other section 363 sale processes and not distributed pursuant to other provisions of the Plan or Orders of the Bankruptcy Court shall be transferred to and vest in the Plan Trust, and administered by the Plan Trustee pursuant to the Plan and Plan Trust Agreement.

3.1.2 ***Plan Trustee***. As of the Effective Date, the Plan Trustee shall be vested with full legal power, capacity and authority, and shall be directed to administer, collect and liquidate the remaining Estate Assets and to implement the Plan.

3.1.3 ***Third Party Claims.*** Subject to the provisions of the Plan, the Plan Trustee may, but is not required to, pursue any Third Party Claim or Avoidance Action not

otherwise released under the Plan, DIP Order or other Order of the Bankruptcy Court by informal demand and/or by commencing litigation.

### 3.2 Classification of Claims and Interests.

3.2.1 **Class 1.** Class 1 consists of the Prepetition Revolving Secured Claim. Class 1 is unimpaired by the Plan.

3.2.2 **Class 2.** Class 2 consists of the Prepetition Term Secured Claim. Class 2 is unimpaired by the Plan.

3.2.3 **Class 3.** Class 3 consists of the Liberty Mutual Secured Claim. Class 3 is impaired by the Plan.

3.2.4 **Class 4.** Class 4 consists of all Miscellaneous Secured Claims. Class 4 is unimpaired by the Plan.

3.2.5 **Class 5.** Class 5 consists of the Priority WARN Claims. Class 5 is impaired by the Plan.

3.2.6 **Class 6**. Class 6 consists of all Priority Non-Tax Claims. Class 6 is impaired by the Plan.

3.2.7 **Class 7.** Class 7 consists of all General Unsecured Claims, including all Deficiency Claims. Class 7 is impaired by the Plan.

3.2.8 **Class 8.** Class 8 consists of all Subordinated Claims. Class 8 is impaired by the Plan.

3.2.9 **Class 9.** Class 9 consists of all Interests. Class 9 is impaired by the Plan.

### 3.3 Treatment of Claims and Interests.

3.3.1 **Class 1 (Prepetition Revolving Secured Claim)**. The holder of the Prepetition Revolving Secured Claim was indefeasibly paid in full, in Cash, prior to the Petition Date. The holder of the Prepetition Revolving Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan.

3.3.2 **Class 2 (Prepetition Term Secured Claim)**. The holder of the Prepetition Term Secured Claim was indefeasibly paid in full, in Cash, by the Debtors. The holder of the Prepetition Term Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan.

3.3.3 **Class 3 (Liberty Mutual Secured Claim).** Except to the extent that a holder of an Allowed Class 3 Liberty Mutual Secured Claim agrees to a less favorable treatment, as a compromise with respect to Liberty Mutual Secured Claim and in full and final satisfaction of the Liberty Mutual Secured Claim, Liberty Mutual shall receive the agreed sum agreed among the Debtors, Plan Trustee and Liberty Mutual from the Cash held by Liberty Mutual to

20

collateralize the Liberty Mutual Secured Claim and the balance of such Cash held by Liberty Mutual shall be paid to the Plan Trustee.

3.3.4    *Class 4 (Miscellaneous Secured Claims)*.  Except to the extent that a holder of an Allowed Class 4 Claim agrees to a less favorable treatment, the holder of each Allowed Class 4 Claim shall receive at the discretion of the Plan Trustee:  (i) Cash from the Available Cash in an amount equal to the lesser of (a) the amount of Allowed Secured Claim and (b) the value of the Debtors' property securing such Allowed Secured Claim currently in the possession of the Debtors or Plan Trust minus the amount of claims secured by such property with legal priority senior to the lien priority of the holder of such Allowed Class 4 Claim; (ii) delivery of the property securing such Allowed Class 4 Claim; or (iii) other treatment such that the Allowed Class 4 Claim shall be rendered Unimpaired.  Any Allowed Deficiency Claim of a holder of an Allowed Class 4 Claim shall be treated as a Class 7 General Unsecured Claim.

3.3.5    **Class 5 (Priority WARN Claims).**  Except to the extent that a holder of Class 5 Priority WARN Claim agrees to a less favorable treatment, in full satisfaction of any and all Priority WARN Claims, the holder of each Class 5 Priority WARN Claim shall receive after payment of all Allowed Administrative Claims, including Professional Fee Claims, and Allowed Claims in Class 1, Class 2, Class 3, and Class 4, its Pro Rata share of Cash from the Available Cash in the amount of $810,625.00, consistent with the settlement reached between the Debtors and holders of Priority WARN Claims that will be subject of a separate motion under Bankruptcy Rule 9019 filed with the Bankruptcy Court.

3.3.6    **Class 6 (Priority Non-Tax Claims).**  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of such Allowed Priority Non-Tax Claim shall either: (a) be paid in full in Cash to the extent that there is sufficient Available Cash to pay such Allowed Priority Non-Tax Claims in full after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5; or (b) to the extent that there are not sufficient Available Cash to pay Allowed Priority Non-Tax Claims in full, each holder of such Allowed Priority Non-Tax Claim shall receive its Pro Rata share of the Available Cash after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5.  Allowed Priority Non-Tax Claims shall be paid as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed Priority Non-Tax Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan.

3.3.7    **Class 7 (General Unsecured Claims).**  Except to the extent that a holder of an Allowed Class 7 General Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed Class 7 General Unsecured Claim shall receive its Pro Rata share of Available Cash after payment in full of (or reserve for) Plan Trust Expenses, all Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6.  Distributions on Account of Allowed Class 7 General Unsecured Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed General Unsecured Claims, unless the

Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan and Plan Trust Agreement. For avoidance of doubt, the holders of Priority WARN Claims shall not hold a Class 7 General Unsecured Claims and shall receive no distribution on account of any Class 7 General Unsecured Claims.

3.3.8   ***Class 8 (Subordinated Claims).***   The holders of Allowed Class 8 Subordinated Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan, on account of such Subordinated Claims.

3.3.9   ***Class 9 (Interests).***   The holders of Interests in Class 9 shall have their Interests against the Debtors extinguished as of the Effective Date and shall receive no Distributions under this Plan.

### 3.4   *Treatment of Unclassified Claims.*

3.4.1   ***Administrative Claims - Professional Claims.***

(a)   **Final Professional Fee Applications**.  All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code must be made by application Filed with the Bankruptcy Court and served on counsel to the Debtors, counsel to the Creditors' Committee, counsel to the Plan Trustee, and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the **"Professional Fee Claim Bar Date"**). Objections to such applications must be Filed and served on counsel to the Debtors, counsel to the Plan Trustee, counsel to the Creditors' Committee, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is fifteen (15) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional).

(b)   **Payment of Interim Amounts**.  The provisions of the Professional Fee Order shall remain in effect as to amounts owing to Professionals prior to the Effective Date.

(c)   **Payment of Professional Fee Claims**.  All Professional Fee Claims shall be paid from the Professional Fee Claim Escrow to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Debtors shall fully fund the Professional Fee Claim Escrow in an amount that is agreed upon by the Debtors and the Creditors' Committee prior to the Effective Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Creditors' Committee are unable to agree on an amount by which the Professional Fee Claim Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Claim Escrow. Any excess funds in the Professional Fee Claim Escrow shall be released to the Plan Trustee to be used for other purposes consistent with the Plan.

(d)    **Post-Effective Date Services**.  After the Effective Date, any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  The Plan Trustee shall pay any Professionals for Post-Effective Date services requested by the Plan Trustee.

3.4.2  *Administrative Claims - Substantial Contribution Compensation and Expenses Bar Date*.  Any person or entity who requests compensation or expense reimbursement for making a substantial contribution ("**Substantial Contribution Claim**") in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court on or before a date that is thirty (30) days subsequent to the Effective Date (the "**Section 503 Deadline**") and serve such application on counsel for the Plan Trustee and on all other parties as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Section 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.  All Allowed Substantial Contribution Claims shall be paid by the Plan Trustee from the Plan Trust Assets within thirty (30) days of allowance by the Bankruptcy Court.

3.4.3  *Administrative Claims – Allowed Claims under section 503(b)(9) of the Bankruptcy Code.*  Allowed Section 503(b)(9) Claims shall be paid in full in Cash by the Plan Trustee from the Plan Trust Assets as soon as reasonably practicable after the Effective Date.

3.4.4  *Administrative Claims – Allowed Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code*.  Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full in Cash by the Plan Trustee from the Plan Trust Assets as soon as reasonably practicable after the Effective Date.

3.4.5  *Other Administrative Claims Bar Date*.  All requests for payment of an Administrative Claim other than Professional Fee Claims, DIP Facility Claims, Administrative Tax Claims under sections 503(b)(1)(B) and (C), amounts owed to the U.S. Trustee, Substantial Contribution Claims and Section 503(b)(9) Claims must be filed with the Bankruptcy Court and served on counsel to the Plan Trustee no later than thirty (30) days after the Effective Date. Unless the Plan Trustee objects to an Administrative Claim on or prior to the Claims Objection Deadline (subject to extension by consent or court order) such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested.  All such Allowed Administrative Claims shall be paid in full in Cash by the Plan Trustee from the Plan Trust Assets as soon as reasonably practicable after the Effective Date.

3.4.6  *Priority Tax Claims*.  In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Trustee from the Plan Trust Assets, at the Plan Trustee's option, as follows: (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding three (3) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the

Confirmation Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Trustee shall have agreed upon in writing.

3.4.7 **DIP Facility Claim**. The DIP Facility has been indefeasibly paid in full in cash, and the DIP Agent and DIP Lender have no Claims against the Debtors or the Debtors' Assets.

**3.5 Implementation of the Plan.**

3.5.1 **In General**. The Plan is a liquidating plan and provides for the liquidation of the Estate Assets and the payment of the proceeds generated therefrom to holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code. The Plan Trustee may, but is not required to, pursue any Third Party Claims not otherwise released under the Plan, DIP Order or other Order of the Bankruptcy Court by informal demand and/or by the commencement of litigation in any court of competent jurisdiction, with the Net Recoveries of such Third Party Claims to be distributed in accordance with the Plan.

3.5.2 **Means of Implementing the Plan**. The primary means by which the Debtors will implement the Plan is through the Plan Trust and Plan Trustee. The Plan Trustee may affect the dissolution of any one or more of the Debtors at any time after the Effective Date, regardless of whether Final Distributions have been made.

3.5.3 **Transfer Taxes**. Any transfer of the Plan Trust Assets or any portion(s) of the Plan Trust Assets pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar Taxes.

3.5.4 **Estimated Plan Distribution**. The Allowed Professional Fee Claims will be paid from the Professional Fee Claims Escrow and the Allowed Administrative Claims, Allowed Substantial Contribution Claims, Allowed Priority Non Tax Claims, and Allowed Priority Tax Claims will be paid pursuant to priorities set forth in the Bankruptcy Code from the Available Cash from the Plan Trust Assets and Third Party Claims. The amount of the Plan distribution on account of Class 7 General Unsecured Claims cannot be determined with certainty. The following table provides a summary of the classification and treatment of Claims and Interests and the potential distributions to Holders of Allowed Claims and Interests under the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO ARTICLE III OF THE PLAN.**

24

# SUMMARY OF EXPECTED RECOVERIES[2]

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | Administrative Claims – Professional Fee Claims | All Professional Fee Claims shall be paid from the Professional Fee Claim Escrow to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Debtors shall fully fund the Professional Fee Claim Escrow in an amount that is agreed upon by the Debtors and the Creditors' Committee prior to the Effective Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Creditors' Committee are unable to agree on an amount by which the Professional Fee Claim Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Claim Escrow. Any excess funds in the Professional Fee Claim Escrow shall be released to the Plan Trustee to be used for other purposes consistent with the Plan. | Approximately $1,142,000.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| N/A | Administrative Claims – Substantial Contribution Claims | Any person or entity who requests compensation or expense reimbursement for making a substantial contribution ("**Substantial Contribution Claim**") in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court on or before a date that is thirty (30) days subsequent to the Effective Date (the "**Section 503 Deadline**") and serve such application on counsel for the Plan Trustee and on all other parties as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Section 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement. All Allowed Substantial Contribution Claims shall be paid by the Plan Trustee from the Available Cash within thirty (30) days of allowance by the Bankruptcy Court. | $0.00 | $0.00 |
| N/A | Administrative Claims – 503(b)(9) Claims | Allowed Section 503(b)(9) Claims shall be paid in full in Cash by the Plan Trustee from the Available Cash as soon as reasonably practicable after the Effective Date | $0.00 | $0.00 |
| N/A | Administrative Claims – Administrative Tax Claims | Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full in Cash by the Plan Trustee from the Available Cash as soon as reasonably practicable after the Effective Date. | $0.00 | $0.00 |
| N/A | DIP Claims | The DIP Facility has been indefeasibly paid in full in cash, and the DIP Agent and DIP Lender have no Claims against the Debtors or the Debtors' Assets. | $0.00 | $0.00 Has already been indefeasibly paid in full |

---

[2]    The recoveries set forth in this table may change based upon changes in the amount of Claims that are "Allowed" as well as other factors related to the Debtors' business operations and general economic conditions.  "Allowed" means with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is scheduled by the Debtors as neither disputed, contingent nor unliquidated and not disputed; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been Filed, is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

# SUMMARY OF EXPECTED RECOVERIES[2]

| N/A | Priority Tax Claims | In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Trustee from the Available Cash, at the Plan Trustee's option, as follows: (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding three (3) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Trustee shall have agreed upon in writing. | Approximately $1,306,518.00 | $1,306,518.00 Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| --- | --- | --- | --- | --- |
| 1 | Prepetition Revolving Secured Claim | The holder of the Prepetition Revolving Secured Claim was indefeasibly paid in full, in Cash, prior to the Petition Date. The holder of the Prepetition Revolving Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan. | $0.00 | $0.00 Has already been indefeasibly paid in full |
| 2 | Prepetition Term Secured Claim | The holder of the Prepetition Term Secured Claim was indefeasibly paid in full, in Cash, by the Debtors. The holder of the Prepetition Term Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan. | $0.00 | $0.00 Has already been indefeasibly paid in full |
| 3 | Liberty Mutual Secured Claim | Except to the extent that a holder of an Allowed Class 3 Liberty Mutual Secured Claim agrees to a less favorable treatment, as a compromise with respect to Liberty Mutual Secured Claim and the in full satisfaction of the Liberty Mutual Secured Claim, Liberty Mutual shall receive agreed sum agreed among the Debtors, Plan Trustee and Liberty Mutual from the Cash held by Liberty Mutual to collateralize the Liberty Mutual Secured Claim and the balance of such Cash held by Liberty Mutual shall be paid to the Plan Trustee. | $576,185.00 | $576,185.00 through application of agreed portion of Cash Collateral held by Liberty Mutual. |
| 4 | Miscellaneous Secured Claims | Except to the extent that a holder of an Allowed Class 4 Claim agrees to a less favorable treatment, the holder of each Allowed Class 4 Claim shall receive at the discretion of the Plan Trustee: (i) Cash from the Available Cash in an amount equal to the lesser of (a) the amount of Allowed Secured Claim and (b) the value of the Debtors' property securing such Allowed Secured Claim currently in the possession of the Debtors or Plan Trust minus the amount of claims secured by such property with legal priority senior to the lien priority of the holder of such Allowed Class 4 Claim; (ii) delivery of the property securing such Allowed Class 4 Claim; or (iii) other treatment such that the Allowed Class 4 Claim shall be rendered Unimpaired. Any Allowed Deficiency Claim of a holder of an Allowed Class 4 Claim shall be treated as a Class 7 General Unsecured Claim. | $0.00 | $0.00 or return of collateral or treatment as set forth in Plan |
| 5 | Priority WARN Claims | Except to the extent that a holder of Class 5 Priority WARN Claim agrees to a less favorable treatment, in full satisfaction of any and all Priority WARN Claims, the holder of each Class 5 Priority WARN Claim shall receive after payment of all Allowed Administrative Claims, including Professional Fee Claims, Allowed Claims in Class 1, Class 2, Class 3, and Class 4, its Pro Rata share of Cash from the Available Cash in the amount of $810,625.00, consistent with the settlement reached between the Debtors and holders of Priority WARN Claims that will be subject of a separate motion under Bankruptcy Rule 9019 filed with the Bankruptcy Court. | $810,625.00 | $810,625.00 |

**SUMMARY OF EXPECTED RECOVERIES[2]**

| | | | | |
|---|---|---|---|---|
| 6 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of such Allowed Priority Non-Tax Claim shall either: (a) be paid in full in Cash to the extent that there is sufficient Available Cash to pay such Allowed Priority Non-Tax Claims in full after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5; or (b) to the extent that there are not sufficient Available Cash to pay Allowed Priority Non-Tax Claims in full, each holder of such Allowed Priority Non-Tax Claim shall receive its Pro Rata share of the Available Cash after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5. Allowed Priority Non-Tax Claims shall be paid as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed Priority Non-Tax Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. | $46,997.00 | $46,997.00 |
| 7 | General Unsecured Claims | Except to the extent that a holder of an Allowed Class 7 General Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed Class 7 General Unsecured Claim shall receive its Pro Rata share of Plan Trust Interests after payment in full of (or reserve for) Plan Trust Expenses, all Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6. Distributions on Account of Allowed Class 7 General Unsecured Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed General Unsecured Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan and Plan Trust Agreement. For avoidance of doubt, the holders of Priority WARN Claims shall not hold a Class 7 General Unsecured Claims and shall receive no distribution on account of any Class 7 General Unsecured Claims. | $153,409,153.00 | Approx. less than 1% |
| 8 | Subordinated Claims | The holders of Allowed Class 8 Subordinated Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan, on account of such Subordinated Claims. | Unknown | $0.00 |
| 9 | Interests | The holders of Interests in Class 9 shall have their Interests against the Debtors extinguished as of the Effective Date and shall receive no Distributions under this Plan. | N/A | $0.00 |

   3.5.5   ***Time of Distributions.***   Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, Distributions under the Plan shall be made as soon as is reasonably practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that Cash becomes available for Distribution to a particular Class pursuant to the treatment of such Class under the Plan. The Plan Trustee shall provide for a holdback of a sufficient amount of Cash, which holdback shall be estimated to be sufficient to satisfy incurred and anticipated Plan Trust Expenses incurred by the Plan Trustee and to provide for a hold-back with respect to Disputed Claims or Plan Trust Expenses before making Distributions under this Plan. The Plan Trustee may make additional Distributions of Cash and property received after the initial Distributions. Such additional Distributions may be made at such times and in such amounts as determined by the Plan Trustee.

PHIL1 6590302v.1

### 3.6 Funding and No Disbursing Agent.

3.6.1 **Plan Predicated Upon Liquidation of the Estate Assets and Net Recoveries from Third Party Claims**. The funding and treatment of Creditors as contemplated in the Plan is predicated upon entry of the Confirmation Order and such Confirmation Order becoming a Final Order.

3.6.2 **No Separate Disbursing Agent**. The Plan Trustee or his/her designee shall serve as the Disbursing Agent under the Plan for all Creditors. The Plan Trustee may select an alternative disbursing agent for Allowed Claim (other than Professional Fee Claims) under the Plan.

### 3.7 Executory Contracts and Unexpired Leases.

3.7.1 **Assumption/Rejection**. On the Effective Date, all Pre-Petition Date executory contracts, employment agreements and unexpired leases other than those leases and contracts that were previously assumed or rejected, except as set forth in Section 7.2 of the Plan, shall be deemed automatically rejected as of that date or such earlier date as the Debtors may have unequivocally terminated such lease or contract. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

3.7.2 **Rejection Damages Bar Date.** If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Trustee or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within thirty (30) days after entry of an Order authorizing the Debtors to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 7.1 of the Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Trustee or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within thirty (30) days after the Effective Date.

3.7.3 **Objections to Rejection Damage Claims.** Objections to proofs of Claim for damages resulting from rejected executory contracts or unexpired leases shall be filed by the Plan Trustee with the Bankruptcy Court any time on or prior to the Claim Objection Deadline. Said objections shall be served upon the holder of the Claim to which such objection is made (or holder's counsel, when applicable) and any Rejection Claim that is Allowed shall be treated as an Allowed Class 7 General Unsecured Claim in accordance with this Plan.

### 3.8 Modification of the Plan.

3.8.1 **Plan May Be Modified**. The Debtors may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing, in consultation with the Creditors' Committee. After the Confirmation Date and prior to the Effective Date, the Debtors, with the consent of the Creditors' Committee,

may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.  From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Trustee may seek non-material modification or amendment of the Plan pursuant to Section 13.2 of the Plan.

### 3.9    *Plan Controls.*

3.9.1    ***Plan Provisions Control***.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of this Disclosure Statement or any other agreement or instrument required or contemplated to be executed by the Debtors or the Plan Trustee, the provisions of the Plan will control.

### 3.10    *Binding Effect.*

3.10.1 ***Provisions of Plan are Binding***.  The provisions of the Plan and the Confirmation Order are binding and will inure to the benefit of the holders of Claims against, and Interests in, the Debtors and their respective successors, assigns, heirs and personal representatives, whether or not such persons voted to accept or reject the Plan.

### 3.11    *Procedures for Resolving Disputed Claims and Interests.*

3.11.1 ***Objections to Claims***.  Subsequent to Confirmation, the Plan Trustee will have the right to object to the allowance of any Claim and will have the exclusive right to object to the allowance of any General Unsecured Claim.  Such Objections, if any, will be filed with the Bankruptcy Court no later than the first Business Day that is at least 180 calendar days after the Effective Date.  For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

3.11.2 ***No Distributions Pending Allowance***.  Except as set forth in Section 8.7(c) of the Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  All objections to Disputed Claims be filed by the Plan Trustee on or before the Claim Objection Deadline, unless such time period is extended by the Bankruptcy Court.

3.11.3 ***Compromises and Settlements***.  Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims against them, and (b) claims that they have against other Persons.  The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle, up to and including the Effective Date, Claims against them and claims that they may have

29

against other Persons.  After the Effective Date, such right will pass exclusively to the Plan Trustee to which such Claims will be conveyed pursuant to the Plan.

3.11.4 ***Procedures for Treating and Resolving Disputed Claims.***  Except as set forth in Section 8.7(c) of the Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  All objections to Disputed Claims shall be filed by the Plan Trustee on or before the Claim Objection Deadline, unless such time period is extended by the Bankruptcy Court.

3.11.5 ***Distribution Reserve.***  The Plan Trustee will withhold the Distribution Reserve from the property to be distributed under the Plan to Claimholders.  The Plan Trustee may request estimation for any Disputed Claim that is contingent or unliquidated, and the Plan Trustee will withhold the Distribution Reserve based upon the estimated amount of each such Claim as determined by the Bankruptcy Court.  If the Plan Trustee elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Plan Trustee will withhold the Distribution Reserve based upon the appropriate Pro Rata percentage Distribution of the Face Amount of such Claim.

3.11.6 ***Distributions After Allowance.***  Payments and Distributions from the Distribution Reserve on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern the Class in which such Claim is classified.  As soon as reasonably practicable after the date when the order or judgment of the Bankruptcy Court allowing all or part of such Claim becomes a Final Order, the Plan Trustee shall distribute to the holder of such Claim any Cash allocated to such Claim in the Distribution Reserve that would have been distributed on the dates Distributions were previously made on account of Allowed Claims had such Claim been an Allowed Claim on such dates.  All Distributions made under this Section of the Plan on account of an Allowed Claim shall be made as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Claims.

3.11.7 ***Claims Allowable Against Multiple Debtors.***  Notwithstanding anything herein or in the Schedules to the contrary, to the extent a Claimholder has a Claim that is an Allowed Claim against more than one of the Debtors based upon the same ground or theory of liability, such Claim shall only be counted once for determination of Distributions under the Plan.

### 3.12 *Retention of Claims Belonging to the Debtors.*

3.12.1 ***Third Party Claims***.  Except as previously waived or released, all Third Party Claims are preserved and retained for enforcement exclusively by the Plan Trustee subsequent to the Effective Date.

### 3.13    Tax Consequences.

3.13.1 **In General**.  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such Holders to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

3.13.2  The Federal income tax consequences of the Plan to a Creditor or Interest Holder will depend upon a number of factors and can be complex.  In general, a Creditor that receives cash in satisfaction of its Allowed Claim will generally receive a gain or loss with respect to the principal amount of the Allowed Claim equal to the difference between: (i) the Creditor's basis in the Claim (other than any Claim in respect to accrued interest); and (ii) the balance of the cash received after any allocation to the accrued interest. The Debtors have not determined the character of any gain or loss to be recognized by an Interest Holder with respect to any distribution, if any, such Interest Holder may receive under the Plan. This discussion does not apply to a Holder of a Claim that is not a "United States person," as such term is defined in the Internal Revenue Code of 1986. **FOR THE FOREGOING REASONS, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) OF THE PLAN.  THE DEBTORS ARE NOT MAKING ANY REPRESENTATION REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR INTEREST HOLDER, NOR ARE THE DEBTORS RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.  CREDITORS AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE PLAN**.

## 4.    POST-CONFIRMATION ISSUES

**4.1    Role of Creditors' Committee.**  From and after the Effective Date, the Creditors' Committee shall not exist, except in accordance with Section 13.3 of the Plan.

### 4.2    Employment of Counsel and Fees.

4.2.1 **Employment of Professionals After Confirmation**.  All professionals employed by the Debtors and the Creditors' Committee during the pendency of the Chapter 11 Cases shall continue to be employed, and will be entitled to compensation as holders of Administrative Claims for their services prior to the Effective Date.  Upon the occurrence of the Effective Date, the Plan Trustee shall be deemed a judicial substitute for each of the Debtors and shall be empowered to retain and/or employ professionals.

### 4.3    Exculpation and Limitation of Liability; Releases; and Injunction

4.3.1    *Compromise and Settlement of Claims, Interests and Controversies.*
Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim and (b) a good faith compromise of all Claims and Causes of Action the Debtors, Creditors' Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Trustee may compromise and settle Claims against the Debtors, Causes of Action against other Entities and Third Party Claims against other Entities.

4.3.2    *Release of Liens.*  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the relevant Estates and its successors and assigns.

4.3.3    *Releases by the Debtors.*  **EFFECTIVE AS OF THE <u>EFFECTIVE DATE</u> OF THE PLAN, PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ON AND AFTER THE EFFECTIVE DATE, EACH <u>RELEASED PARTY</u> IS DEEMED CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED AND ACQUITTED BY EACH AND ALL OF THE <u>DEBTORS</u> AND THE DEBTORS' <u>ESTATES</u> FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF EACH AND ALL OF THE <u>DEBTORS</u> OR THE DEBTORS' <u>ESTATES</u>, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT EACH AND ALL OF THE <u>DEBTORS</u> OR THE DEBTORS' <u>ESTATES</u> (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR**

HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY OR ALL OF THE DEBTORS, THE DEBTORS' LIQUIDATION, THE <u>CHAPTER 11 CASES</u>, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY <u>RELEASED PARTY</u>, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE <u>CHAPTER 11 CASES</u>, THE NEGOTIATION, FORMULATION, PREPARATION, OR PERFORMANCE OF THE DIP FACILITY, THE <u>ASSET SALE</u>, THE <u>PLAN</u>, THE <u>DISCLOSURE STATEMENT</u> OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE <u>EFFECTIVE DATE</u> OF THE PLAN RELATING TO THE <u>DEBTORS</u> OR THE DEBTORS' <u>ESTATES</u>, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

       4.3.4 *Releases by Holders.* <u>SUBJECT TO THE RIGHT OF EACH HOLDER OF A CLAIM AGAINST THE DEBTOR TO AFFIRMATIVELY 'OPT OUT' OF THE RELEASE SET FORTH BELOW BY NOTING SUCH "OPT OUT" ELECTION ON THE BALLOT TO VOTE ON THE PLAN</u>, AS OF THE <u>EFFECTIVE DATE</u> OF THE <u>PLAN</u>, EACH AND ALL OF THE <u>RELEASING PARTIES</u> SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE AND ACQUITTED EACH AND ALL OF THE <u>RELEASED PARTIES</u> AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY OR ALL OF THE <u>DEBTORS</u>, THE DEBTORS' LIQUIDATION, THE <u>CHAPTER 11 CASES</u>, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY <u>CLAIM</u> OR <u>INTEREST</u> THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE <u>DEBTORS</u> AND ANY <u>RELEASED PARTY</u>, THE RESTRUCTURING OF <u>CLAIMS</u> AND <u>INTERESTS</u> BEFORE OR DURING THE <u>CHAPTER 11 CASES</u>, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE <u>DIP FACILITY</u>, THE <u>ASSET SALE</u>, THE <u>PLAN</u>, THE <u>DISCLOSURE STATEMENT</u>, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR

**BEFORE THE <u>EFFECTIVE DATE</u> OF THE <u>PLAN</u> RELATING TO THE <u>DEBTORS</u> OR THE DEBTORS' <u>ESTATES</u>, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

      4.3.5  ***Liabilities to, and Rights of, Governmental Units.***  Nothing in the Plan or Confirmation Order shall release, or preclude:  (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Plan Trustee; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability.  Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

      4.3.6  ***Exculpation.***    **EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE <u>PLAN</u>, NO <u>EXCULPATED PARTY</u> SHALL HAVE OR INCUR, AND EACH <u>EXCULPATED PARTY</u> IS HEREBY RELEASED AND EXCULPATED FROM ANY <u>EXCULPATED CLAIM</u>, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY <u>EXCULPATED CLAIM</u>, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE <u>PLAN</u>. THE <u>DEBTORS</u> (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE <u>BANKRUPTCY CODE</u> WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF <u>ESTATE ASSETS</u> TO THE <u>PLAN TRUST</u> PURSUANT TO THE <u>PLAN</u> AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE <u>PLAN</u> OR THE TRANSFER OF <u>ESTATE ASSETS</u> PURSUANT TO THE PLAN.**

      4.3.7  ***Injunction.***    **FROM AND AFTER THE <u>EFFECTIVE DATE</u>, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE <u>PLAN</u> OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE <u>PLAN</u> OR THE <u>CONFIRMATION ORDER</u>.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE <u>PLAN</u> OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE <u>PLAN</u>, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD <u>CLAIMS</u> OR <u>INTERESTS</u> THAT HAVE BEEN RELEASED PURSUANT TO SECTION 9.3 OR SECTION 9.4, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.6 ARE PERMANENTLY ENJOINED, FROM AND AFTER THE <u>EFFECTIVE DATE</u>,**

FROM TAKING ANY OF THE FOLLOWING ACTIONS:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIMS OR INTERESTS OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

4.3.8    FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS ARTICLE IX, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX OF THE PLAN.

4.3.9    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, OR ESTATE ASSETS.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED.

4.3.10  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER

THE **EFFECTIVE DATE**, ALL **CLAIMS** SHALL BE FULLY RELEASED, AND THE **INTERESTS** SHALL BE CANCELLED, AND THE **DEBTORS'** LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE **BANKRUPTCY CODE.**

4.3.11 ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE **DEBTORS**, THE DEBTORS' **ESTATES**, THE **CREDITORS' COMMITTEE** THE **PLAN TRUSTEE**, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER **CLAIMS** OR **INTERESTS** BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE **EFFECTIVE DATE**. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE **EFFECTIVE DATE**, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE **BANKRUPTCY COURT**, A **CLAIM** MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE **BANKRUPTCY COURT** OR THE CONSENT OF THE **PLAN TRUSTEE**. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED **CLAIM** FILED SHALL BE DEEMED **DISALLOWED** IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE **BANKRUPTCY COURT**.

4.3.12 *Term of Injunctions or Stays*. Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

4.3.13 *No Liability for Solicitation or Participation*. As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

## 5.   FEASIBILITY

### 5.1   *Financial Feasibility Analysis.*

5.1.1 *Bankruptcy Code Standard*. The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless contemplated by the Plan.

5.1.2   *No Need for Further Reorganization of Debtors*.  The Plan provides for the liquidation of all of the Debtors' Assets.  Accordingly, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors.

## 6.   ALTERNATIVES TO PLAN

### 6.1   *Chapter 7 Liquidation*.

6.1.1   *Bankruptcy Code Standard*.  Notwithstanding acceptance of the Plan by the requisite number of Creditors and Interest Holders of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each Impaired Class of Claims and Interests a recovery that has a value at least equal to the value of the distribution that each such Person would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

6.1.2   *Plan is in Best Interest of Creditors*.  The Debtors believe that the Plan satisfies this standard because the Plan provides for an orderly liquidation of the Assets. Furthermore, the Debtors believe that the Plan also provides Creditors with a degree of certainty that would not exist if the Assets were subject to liquidation outside of the Plan and eliminates the risks and expenses of the marketplace and continual administration of the Debtors.  In this regard, in the event of a liquidation under Chapter 7, some administrative expenses may go unpaid, general unsecured creditors would likely receive no distribution. and the following is likely to occur:

1.      Additional   administrative   expenses,   including   trustee's commissions, fees for trustee's accountant, attorneys and other professionals likely to be retained, would be incurred with priority over general unsecured claims under section 507(a)(1) of the Bankruptcy Code and would materially reduce Creditor recovery.

2.      Distributions would likely be substantially delayed, while expenses of administration would continue to grow.

It is the Debtors' belief that in a Chapter 7 liquidation of the Debtors, the Unsecured Creditors would not receive a distribution.  Accordingly, the Debtors believes that the Plan is in the best interests of Creditors.  See Chapter 7 Liquidation Comparison attached hereto as Exhibit A.

### 6.2   *Risk Factors*.

6.2.1   There can be no assurance by the Debtors that any remaining liquidation proceeds will be generated from the liquidation of the Debtors' Assets.  Even in the event of the liquidation of the Debtors' remaining Assets, there can be no assurance by the Debtors that such sale or sales will generate additional proceeds for distribution to the holders of Allowed General Unsecured Claims.

6.2.2   There can be no assurance at this time of the number or amount of Claims that will ultimately be Allowed, and thus the projected recoveries disclosed in this Disclosure

37

A134

Statement are highly speculative. A large amount of Allowed Claims may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Plan. Some holders are not entitled to any recovery pursuant to the terms of the Plan, and, depending on the accuracy of the Debtors' various assumptions, even those holders entitled to a recovery under the terms of the Plan may ultimately receive no recovery. Therefore, there can be no assurance by the Debtors that there will be Plan Trust Assets available to make Distributions to holders of Allowed Claims or that there will be sufficient Plan Trust Assets to meet the projected recoveries provided for in this Disclosure Statement.

6.2.3   Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtors' creditors, including holders of Claims in the voting classes.

6.2.4   Although the Debtors have made commercially reasonable efforts to disclose projected recoveries in this Disclosure Statement, it is possible that the amount of Allowed Claims will be materially higher than any range of possible Allowed Claims the Debtors have considered to date, and thus creditor recoveries could be materially reduced or eliminated. In addition, the timing of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guarantee the timing of any recovery on an Allowed Claim.

6.2.5   Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with this requirement. There can be no assurance, however, that the Bankruptcy Court will reach the same conclusion.

6.2.6   The Debtors may not be able to secure confirmation of the Plan. The Debtors will need to satisfy section 1129 of the Bankruptcy Code, which sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, a finding by a bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; (c) the value of distributions to non-accepting holders of claims and interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code; and (d) such plan provide for the payment in full of administrative claims. There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or the Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the Solicitation Procedures, and the voting results are appropriate, the Bankruptcy Court can still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met, including the

requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims will receive with respect to their Allowed Claims.

6.2.7   The Bankruptcy Court may determine that the Plan cannot be confirmed under section 1129 of the Bankruptcy Code if the Plan Trust Assets are not sufficient to satisfy Allowed Administrative Claims in full.   If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims will receive with respect to their Allowed Claims.

6.2.8   The Bankruptcy Court may determine that the Plan does not meet the requirements for confirmation under the Bankruptcy Code and applicable law, including, without limitation, as a result of the third party releases conferred upon the Debtors' insiders and other parties under the Plan.

6.2.9   Article X of the Plan sets forth certain conditions that must be fulfilled before the Effective Date of the Plan can occur.  As of the date of this Disclosure Statement, there can be no assurance that any or all of such conditions in the Plan will be met (or waived) or that other conditions to consummation (if any) will be satisfied.  Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Effective Date will occur.

6.2.10  Any delays of either confirmation or effectiveness of the Plan could result in, among other things, increased administrative costs.  The negative effects of delays in confirmation or effectiveness of the Plan could affect the ultimate approval of the Plan by the Bankruptcy Court.

6.2.11  Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied:  (i) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor, or a successor to the debtor under the plan; (ii) the recipients of the securities must hold a prepetition or administrative expense claim against the debtor or an interest in the debtor; and (iii) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.  To the extent that the Plan Trust Interests are deemed to constitute securities issued in accordance with the Plan, the Debtors believe that the Plan Trust Interests should satisfy the requirements of section 1145(a)(1) and, therefore, should be exempt from registration under the Securities Act and applicable state securities laws.  Claimholders or Interest holders should consult their own advisors regarding any securities law consequences of the treatment of their Claims or Interests under the Plan.

6.2.12  As discussed in this Disclosure Statement, there are material income tax considerations, risks and uncertainties associated with consummation of the Plan.  Claimholders and Interest holders should read carefully the discussion set forth in Section 3.13 of this Disclosure Statement and consult with their own tax advisors to determine any tax implications of the Plan to such holders.

*6.3*     *Recommendations.*

6.3.1   It is the position of the Debtors that the Plan is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.  Conversion of these Chapter 11 Cases would result in: (i) substantial delays in the distribution of any proceeds (if any) available under such alternative; (ii) increased uncertainty as to whether payments would be made to Unsecured Creditors; and (iii) substantially increased administrative costs.

**THE DEBTORS RECOMMEND THAT YOU VOTE IN FAVOR OF THE PLAN.**

**7.     CONCLUSION**

It is important that you exercise your right to vote on the Plan.  It is the Debtors' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against the Debtors and is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.

IN WITNESS WHEREOF, the Debtors have executed this Disclosure Statement this 2nd day of November, 2017.

Respectfully submitted,

LSC Wind Down, LLC f/k/a Limited Stores Company, LLC
LS Wind Down, LLC f/k/a Limited Stores, LLC
TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC

By:     */s/ Timothy D. Boates*
        Timothy D. Boates
        Chief Restructuring Officer

# EXHIBIT A

## Chapter 7 Liquidation Comparison

| As of December 31, 2017 | Chapter 11 | Chapter 7 |
|---|---|---|
| *Forecasted Cash Available for Distribution* | | |
| Cash & Equivalents | 4,047,000 | 4,047,000 |
| Sale of IL tax credit | 90,000 | 90,000 |
| Release of Amex reserve | 90,000 | 90,000 |
| Release of Discover Reserve | 208,000 | 208,000 |
| **TOTAL CASH & RECEIPTS** | **4,435,000** | **4,435,000** |
| *Forecasted Administrative Expenses Prior to Plan Effective Date* | | |
| Administrative Expenses (non-professional) | 158,000 | 158,000 |
| Administrative Expenses (professional) | 373,000 | 373,000 |
| *Forecasted Outstanding as of Plan Effective Date* | | |
| Professional Fee Claims | 1,142,000 | 1,142,000 |
| Priority WARN Claims | 810,625 | 810,625 |
| Priority Tax Claims | 1,306,518 | 1,306,518 |
| Priority Non-Tax Claims | 46,997 | 46,997 |
| **CASH AVAILABLE TO UNSECURED CREDITORS** | **597,860** | **597,860** |
| **Incremental Chapter 7 Fees & Costs** | | |
| Trustee Fee % (3% of all Cash Distributed) | --- | 133,050 |
| Attorney and Other Professional Fees | --- | 350,000 |
| **TOTAL INCREMENTAL CHAPTER 7 FEES & COSTS** | **---** | **483,050** |
| **COMPARISON OF CHAPTER 11 VS. CHAPTER 7 AVAILABLE CASH** | **597,860** | **114,810** |

**EXHIBIT B**

**Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down,
LLC f/k/a Limited Stores Company, LLC and its Debtor Affiliates**

*Solicitation Version*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LSC Wind Down, LLC, *et al.*,[1] | ) | Case No. 17-10124 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MODIFIED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF**
**LSC WIND DOWN, LLC F/K/A LIMITED STORES COMPANY, LLC AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**NOVEMBER 2, 2017**

KLEHR HARRISON HARVEY BRANZBURG LLP

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email:      dpacitti@klehr.com
Email:      myurkewicz@klehr.com

*Counsel for the Debtors and Debtors-in-Possession*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  LSC Wind Down, LLC f/k/a Limited Stores Company, LLC (6463), LS Wind Down, LLC f/k/a Limited Stores, LLC (0165), and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (6094).

# INTRODUCTION

LSC Wind Down, LLC f/k/a Limited Stores Company, LLC, LS Wind Down, LLC f/k/a Limited Stores, LLC, and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (collectively, the ***"Debtors"***), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, hereby propose the following modified joint chapter 11 plan of liquidation pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtors' history, businesses, properties, key contracts, and a summary and analysis of the Plan, stakeholders of the Debtors should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached.  ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the wind down of the Debtors' affairs, continued liquidation and conversion of all of the Debtors' remaining assets to Cash and the distribution of the net proceeds realized therefrom, in addition to Cash on hand on the Effective Date of the Plan, to creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code.  The Plan does not provide for a distribution to holders of Subordinated Claims or Interests, and their votes are not being solicited.  The Plan contemplates the appointment of a Plan Trustee to, among other things, finalize the wind down of the Debtors' affairs, resolve Disputed Claims, pursue any unreleased Causes of Action, implement the terms of the Plan and the Plan Trust Agreement and make Distributions to holders of Allowed Claims and administer the Plan Trust Assets.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a Claimholder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders.

The Debtors expressly reserve their right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.**

2

# ARTICLE I

**A.    Scope of Definitions**

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(a)    all Defined Terms shall have the meanings ascribed to them in Section 1.1 of the Plan;

(b)    any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise;

(c)    whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

(d)    any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(e)    any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may be amended, modified, or supplemented from time to time;

(f)    any reference to a specific Person includes any successors or assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or assign of such Person;

(g)    unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(h)    unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

(i)    the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(j)    whenever the Plan uses the word "including," such reference shall be deemed to mean "including, without limitation,";

(k)    captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

3

A142

(l)     whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

(m)     the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document; and

(n)     all other rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

The following Defined Terms shall have the respective meanings specified below.

**B.     Definitions**

**1.1     "Administrative Claim"** means a claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, (b) Professional Claims, and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

**1.2     "Administrative Tax Claim"** means a claim for any tax of a kind specified in section 503(b)(1)(B) and (C) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

**1.3     "Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim shall be the lesser of the amount stated in a proof of claim filed for such Claim (if less than the amount Scheduled for such Claim), the amount agreed to in a written settlement, or the amount allowed by a Final Order.  All Distributions on account of an Allowed Claim will be made to the Claimholder of record on the Record Date.

**1.4     "Allowed [ ] Claim"** means an Allowed Claim of the type described.

4

1.5 **"Asset Sale"** means the sale of the Debtors' Assets pursuant to the *Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (B) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts; and (D) Granting Related Relief* [Docket No. 276].

1.6 **"Available Cash"** means all Cash held by the Debtors on the Effective Date and transferred to the Plan Trust, *plus* all Cash realized after the Effective Date by the Debtors and Plan Trust from the sale, collection, or other disposition of the Estate Assets, Plan Trust Assets and Third Party Claims, but excluding the amount of Cash: (i) necessary to fund and maintain the Professional Fee Claim Escrow; (ii) estimated and reserved by the Plan Trustee to (A) pay all fees payable under 28 U.S.C. § 1930, (B) provide a reasonable and necessary reserve for Plan Trust Expenses that are anticipated to be payable following any date on which the extent of Available Cash is determined, and (C) fund and maintain any other postpetition reserve requirements in connection with any agreements or otherwise.

1.7 **"Avoidance Actions"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

1.8 **"Ballot"** means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders with Claims in Classes that are impaired under the Plan and entitled to vote under Article IV hereof in connection with the solicitation of acceptances of the Plan.

1.9 **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.10 **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

1.11 **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, (b) the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and (c) the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.12 **"Bar Date"** means the date or dates established by the Bankruptcy Court and/or Bankruptcy Rule 3002 by which Proofs of Claim must be filed.

1.13 **"Business Day"** means any day, excluding Saturdays, Sundays and legal holidays, on which commercial banks are open for business in Wilmington, Delaware.

1.14 **"Cash"** means U.S. currency, a certified check, cashier's check or wire transfer of good funds from any source.

**1.15** **"Causes of Action"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights (including rights to legal remedies, equitable remedies, and payment), claims, cross claims, third-party claims, interests, damages, debts, judgments, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known, unknown, foreseen, unforeseen, existing, hereinafter arising, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, suspected, unsuspected, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, arising before, on, or after the Petition Date, in contract, tort, law, equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or Chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim. For the avoidance of doubt, the Comenity Action and all Avoidance Actions are Causes of Action.

**1.16** **"Challenge Rights Order"** means the *Order Approving Stipulation (I) Resolving Committee's Challenge Rights Under Final DIP Order; and (II) Releasing Funds Escrowed For the Benefit of the DIP Agent and the Pre-Petition Agent* [Docket No. 425].

**1.17** **"Chapter 11 Cases"** means the Debtors' bankruptcy cases pending in the Bankruptcy Court and being jointly administered with one another as case number 17-10124 (KJC) and "Chapter 11 Case" means any one of the Chapter 11 Cases.

**1.18** **"Claim**" means a claim against any one of the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.19** **"Claim Objection Deadline"** means, subject to extension as set forth in Section 8.6 of this Plan, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.20** **"Claims Agent"** means Donlin Recano & Co., Inc., the claims and noticing agent of the Debtors.

**1.21** **"Claimholder"** means a holder of a Claim.

**1.22** **"Class"** means a category of Claimholders or Interestholders described in Article III of the Plan.

**1.23** **"Comenity Action"** means the adversary proceeding commenced against Comenity Bank, f/k/a World Financial Network Bank, Successor by Conversion to Word Financial Network National Bank in the Bankruptcy Court bearing Adversary Proceeding No. 17-50558 (KJC) and any substitute or successor action.

6

**1.24**    **"Confirmation Date"** means the date of entry of the Confirmation Order.

**1.25**    **"Confirmation Hearing"** means the hearing before the Bankruptcy Court on confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code.

**1.26**    **"Confirmation Hearing Notice"** means the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the Confirmation Hearing and the time for filing objections to the confirmation of the Plan.

**1.27**    **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming in all respects all of the provisions, terms and conditions of this Plan.

**1.28**    **"Creditors' Committee"** means the Official Committee of Unsecured Creditors consisting of the Persons appointed to such Committee in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code and their appointed successors, as amended from time to time.

**1.29**    **"CRO"** means Timothy D. Boates and RAS Management Advisors LLC.

**1.30**    **"Cure"** means with respect to the assumption and assignment of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (a) the distribution of Cash by the Debtors at or before the closing of the sale pursuant to the Asset Sale, or (b) payment of Cash by the assignee, in an amount equal to all due and payable unpaid monetary obligations, without interest, under such executory contract or unexpired lease, or such other amount as may be agreed upon by the parties to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.31**    **"Debtors"** shall have the meaning ascribed thereto in the Introduction.

**1.32**    **"Deficiency Claim"** means, as to a Secured Creditor, that portion of such Secured Creditor's Allowed Secured Claim not paid or satisfied from the proceeds of any sale or other disposition of the Debtors' assets or return of such Secured Creditor's collateral; and, as to any other creditor asserting a Claim that is subject to a lien or security interest in property of the Estates, such Claim to the extent it is (a) rendered an unsecured claim by virtue of section 506(a) of the Bankruptcy Code and (b) otherwise determined to be an Allowed Claim.

**1.33**    **"Defined Term"** means any capitalized term that is defined in this Section 1.1 of the Plan.

**1.34**    **"DIP Agent"** means Cerberus Business Finance LLC.

**1.35**    **"DIP Facility"** means that senior secured and superpriority debtor-in-possession credit facility provided pursuant to the DIP Facility Credit Agreement and DIP Order.

**1.36**    **"DIP Facility Claim"** means any Claim derived from, or based upon, relating to, or arising from, the DIP Facility Credit Agreement.

7

1.37     **"DIP Facility Credit Agreement"** means the Senior Secured and Superpriority Debtor-in-Possession Credit Agreement governing the DIP Facility, date as of January 18, 2017 among the Debtors, the DIP Agent and the DIP Lenders (as amended, restated, supplemented or otherwise modified from time to time), as well as any other documents entered into in connection therewith.

1.38     **"DIP Lenders"** means the lenders that from time to time are or were parties to the DIP Facility Credit Agreement.

1.39     **"DIP Order"** means the Final Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to the Pre-Petition Lenders; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief [Docket No. 233], authorizing, *inter alia*, the Debtors to enter into the DIP Facility Credit Agreement and incur the postpetition obligations thereunder (as further amended, restated, supplemented or otherwise modified from time to time), and under which the Challenge Period (defined therein) has expired and was resolved pursuant to the Stipulation (I) Resolving Committee's Challenge Rights Under Final DIP Order; and (II) Releasing Funds Escrowed For the Benefit of the DIP Agent and the Pre-Petition Agent [Docket No. 428].

1.40     **"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established, but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.41     **"Disclosure Statement"** means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.42     **"Disclosure Statement Approval Order"** means a Final Order approving, among other things, the Disclosure Statement.

1.43     **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, a Claim that (a) has not been Scheduled or is Scheduled by the Debtors as unknown or as contingent, unliquidated or disputed for which a proof of claim has been filed or (b) is the subject of an objection filed with the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.44     **"Distribution"** means any distribution provided for in this Plan to holders of Allowed Claims in full or partial satisfaction of such Allowed Claims.

8

**1.45** **"Distribution Dates"** means collectively, the First Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

**1.46** **"Distribution Record Date"** or **"Record Date"** means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

**1.47** **"Distribution Reserve"** means Cash from the Plan Trust in an amount equal to the Distribution or Distributions under applicable classes of Claims that shall be made on account of Disputed Claims when allowed, which Cash will be held by the Plan Trustee pending allowance of Disputed Claims, and then distributed on account of Allowed Claims in accordance with Section 8.7(a) of the Plan. The Distribution Reserve shall be funded from the Plan Trust Assets.

**1.48** **"Effective Date"** means the first Business Day on which the conditions precedent set forth in Sections 10.2 of this Plan have been satisfied or waived as provided in Section 10.3 of this Plan.

**1.49** **"Estate Assets"** means all of the right, title and interest of the Debtors in and to property of whatever type or nature (real, personal, mixed, tangible or intangible), including property of each Debtor's Estate.

**1.50** **"Estates"** means as to each Debtor the bankruptcy estate of the Debtor arising pursuant to section 541 of the Bankruptcy Code.

**1.51** **"Exculpated Claim"** means any Claim related to any act or omission in connection with, derived from, based upon, related to or arising from the Debtors' in or out-of-court sale and restructuring efforts, the Chapter 11 Cases, including the negotiation, formulation, preparation or performance of the DIP Loan Facility, the Asset Sale, the sale and liquidation of assets, formulation, preparation, dissemination, negotiation, filing, confirmation, approval, implementation or administration of the Disclosure Statement, the Plan, the property to be distributed under the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation and consummation of the Plan and the administration and implementation of the Plan, or the Distribution of property under the Plan or any other related agreement.

**1.52** **"Exculpated Party"** means each of: (a) the Debtors, (b) the CRO, and (c) the Creditors' Committee and its members in their capacity as such and with respect to clauses (a) through (c) such entities' predecessors, participants, successors and assigns, subsidiaries, affiliates, beneficial owners, managed accounts or funds, current and former officers, directors, managers, principals, shareholders, direct and indirect equity holders, members, partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

**1.53** **"Exhibit"** means an exhibit annexed to the Plan.

9

1.54    **"Face Amount"** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the Claimholder in any proof of claim filed with the Bankruptcy Court, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.55    **"Final Decree"** means the order entered pursuant to section 350, of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Cases.

1.56    **"Final Distribution Date"** means the date(s) on which a final Distribution is made to holders of Allowed Claims entitled to Distributions therefrom.  The Final Distribution Date(s) shall be one or more dates, as determined by the Plan Trustee, which is after the liquidation into Cash of all Plan Trust Assets (other than those assets abandoned by the Debtors or the Plan Trustee, as applicable) and the collection of other sums due or otherwise remitted or returned to the Estates or Plan Trust.

1.57    **"Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.58    **"First Distribution Date"** means with respect to a Claim that is Allowed as of the Effective Date, the Effective Date or the date that is as soon as reasonably practicable after the Effective Date.

1.59    **"General Unsecured Claim"** means a Claim that is not an Administrative Claim, Priority Claim, Secured Claim or Miscellaneous Secured Claim, and specifically includes, without limitation, any Allowed Deficiency Claim of any holder of a Miscellaneous Secured Claim.

1.60    **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.61    **"Interest"** means the rights of any current or former holder or owner of any shares of common stock, preferred stock or any other equity securities of the Debtors authorized and issued prior to the Confirmation Date, exclusive of any such interests held in treasury by the Debtors, and the rights of any member of the limited liability company Debtors.

1.62    **"Interestholder"** means a holder of an Interest.

1.63    **"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

1.64    **"Liberty Mutual Secured Claim"** means the Secured Claim of Liberty Mutual Insurance Company with respect to known, liquidated, contingent and unliquidated claims under the Debtors' workers compensation program that is collateralized by Cash in the amount of approximately $852,000.00.

**1.65** **"Miscellaneous Secured Claim"** means any Secured Claim other than the DIP Facility Claim, the Prepetition Revolving Secured Claim, the Prepetition Term Secured Claim, and the Liberty Mutual Secured Claim whether by operation of law, contract or otherwise, but solely to the extent of the value, as of the Effective Date, or such other date as is established by the Bankruptcy Court, of such security interest or lien after giving effect to all security interests or liens senior in priority.

**1.66** **"Net Recoveries"** shall mean the net proceeds of the liquidation of the Assets of the Debtors after payment of all necessary and actual fees and expenses associated with the liquidation of such Assets.

**1.67** **"Non-Compensatory Penalty Claim"** means any Claim, secured or unsecured, for any fine, penalty or forfeiture, or for multiple, exemplary or punitive damages, to the extent such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

**1.68** **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

**1.69** **"Petition Date"** means, as to each Debtor, January 17, 2017, which is the date on which each Debtor filed its petition commencing its Chapter 11 Case.

**1.70** **"Plan"** means the plan which is herein jointly proposed by the Debtors, as consolidated entities, for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as such plan may be amended or modified from time to time in accordance with the Bankruptcy Code and after consultation with the Creditors' Committee.

**1.71** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules and Exhibits to the Plan to be filed no later than ten (10) days before the Confirmation Hearing, in consultation with the Creditors' Committee, on notice to parties in interest, and additional documents filed before the Effective Date as supplements or amendments to the Plan Supplement (all in consultation with the Creditors' Committee). The Debtors shall have the right to amend the documents contained in, and Exhibits to, the Plan Supplement through the Effective Date in consultation with the Creditors' Committee.

**1.72** **"Plan Trust"** means the trust established for the benefit of the Plan Trust Beneficiaries on the Effective Date in accordance with the terms of the Plan and the Plan Trust Agreement which shall be a grantor, liquidating trust within the meaning of Treasury Regulation 301.7701-4(d).

**1.73** **"Plan Trust Agreement"** means the agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Plan Trust.

**1.74** **"Plan Trust Assets"** means collectively, all Estate Assets as of the Effective Date, including Cash on hand of the Debtors less amounts funded into the Professional

11

Fee Escrow Account, all Causes of Action, including Third Party Claims, and all other Assets of the Debtors not previously liquidated prior to the Effective Date, together with all Net Recoveries of the liquidation of the Debtors' Assets from any source

       **1.75**    **"Plan Trust Beneficiaries"** means the holders of Allowed General Unsecured Claims.

       **1.76**    **"Plan Trust Expenses"** means all reasonable and documented fees, expenses, and costs incurred by the Plan Trustee in connection with carrying out the obligations of the Plan Trust, including the maintenance or disposition of the Plan Trust Assets (including Plan Trustee fees, indemnity reserves, attorneys' fees, the fees of other professionals, and other Persons retained by the Plan Trustee, personnel-related expenses, and any taxes imposed on the Plan Trust or in respect of the Plan Trust Assets), and any other expenses incurred in accordance with the Plan Trust Agreement.

       **1.77**    **"Plan Trust Indemnified Parties"** means the Plan Trustee and its consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns.

       **1.78**    **"Plan Trust Interests"** means the non-transferable, beneficial interests in the Plan Trust that will entitle the holder thereof to the distributions of the Plan Trust Assets which will be made pursuant to the Plan and the Plan Trust Agreement, which Plan Trust Interests will be non-transferable and non-assignable except by operation of law.

       **1.79**    **"Plan Trustee"** means Person designated by the Creditors' Committee in consultation with the Debtors for such position in the Plan Supplement or such other Person subsequently appointed as trustee for the Plan Trust in accordance with the Plan Trust Agreement.

       **1.80**    **"Prepetition Revolving Secured Agent"** means Bank of America, National Association, together with its successors and assigns.

       **1.81**    **"Prepetition Revolving Secured Claim"** means those claims held by the Prepetition Revolving Secured Agent and Prepetition Revolving Secured Lenders on account of amounts owed under the Prepetition Revolving Secured Credit Facility.

       **1.82**    **"Prepetition Revolving Secured Credit Agreement"** means the Credit Agreement by and among the Debtors, Prepetition Revolving Secured Agent and the Prepetition Revolving Secured Lenders, dated as of August 24, 2007 (as amended, restated, supplemented or otherwise modified from time to time).

       **1.83**    **"Prepetition Revolving Secured Credit Facility"** means that certain prepetition revolving secured credit facility established by the Prepetition Revolving Secured Credit Agreement.

**1.84** **"Prepetition Revolving Secured Lenders"** means the parties that time to time are or were lenders under Prepetition Revolving Secured Credit Agreement, together with their successors and assigns.

**1.85** **"Prepetition Term Secured Agent"** means Cerberus Business Finance, LLC, together with its successors and assigns.

**1.86** **"Prepetition Term Secured Claim"** means those claims held by the Prepetition Term Secured Agent and Prepetition Term Secured Lenders on account of amounts owed under the Prepetition Term Secured Credit Facility.

**1.87** **"Prepetition Term Secured Credit Agreement"** means the Term Loan Agreement by and among the Debtors, Prepetition Term Secured Agent and the Prepetition Term Secured Lenders, dated as of December 20, 2011 (as amended, restated, supplemented or otherwise modified from time to time).

**1.88** **"Prepetition Term Secured Credit Facility"** means that certain prepetition revolving secured credit facility established by the Prepetition Term Secured Credit Agreement.

**1.89** **"Prepetition Term Secured Lenders"** means the parties that time to time are or were lenders under Prepetition Term Secured Credit Agreement, together with their successors and assigns.

**1.90** **"Priority Non-Tax Claim"** means any Claim of a kind specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code but not including the Priority WARN Claim or Administrative Claims.

**1.91** **"Priority Tax Claim"** means any Claim of a governmental unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

**1.92** **"Priority WARN Claim"** means any Claim of any Person under The Worker Adjustment and Retraining Notification Act 29 U.S.C. §2101 *et seq*., or other similar state statute, that is of a kind specified in section 507(a)(4) or (5) of the Bankruptcy Code.

**1.93** **"Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**1.94** **"Professional"** means a professional retained in the Chapter 11 Cases pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, or otherwise.

**1.95** **"Professional Fee Claim"** means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

**1.96** **"Professional Fee Claim Bar Date"** shall have the meaning set forth in Section 4.2(a) of the Plan.

13

**1.97** **"Professional Fee Claim Escrow"** means an escrow account funded by the Debtors on the Effective Date and maintained by counsel to the Debtors to provide sufficient funds to pay in full all unpaid Allowed Professional Fee Claims.

**1.98** **"Professional Fee Order"** means an order or orders establishing procedures for the interim compensation for Professionals that has been or may be entered by the Bankruptcy Court.

**1.99** **"Record Date"** or **"Distribution Record Date"** means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

**1.100** **"Released Party"** means each of: (a) the Debtors; (b) the Sponsor; (c) the Creditors' Committee and its members in their capacity as such; and (d) with respect to each of the foregoing entities in clauses (a) through (c), each and all of such entities' direct and indirect current and former: equity holders, affiliates, predecessors, participants, successors and assigns, parents, subsidiaries, partners (including general partners and limited partners), managed accounts or funds, management companies, fund advisors, investors, beneficial owners, managing members, directors, managers, officers, principals, advisory board members, controlling persons, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives.

**1.101** **"Releasing Parties"** means each of: (a) the Debtors, (b) the Prepetition Revolving Secured Lenders, (c) the Prepetition Term Secured Lenders, (d) the Prepetition Revolving Secured Agent, (e) the Prepetition Term Secured Agent, (f) the DIP Lenders, (g) the DIP Agent, (h) the holders of Interests, (i) the Sponsors, (j) all holders of Claims that vote to accept or are deemed to accept the Plan; (k) all holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; and (*l*) all holders of Claims or Interests that vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; and (m) with respect to each of the foregoing entities in clauses (a) through (*l*), each and all of such entities' direct and indirect current and former: equity holders, affiliates, predecessors, participants, successors and assigns, parents, subsidiaries, partners (including general partners and limited partners), managed accounts or funds, management companies, fund advisors, investors, beneficial owners, managing members, directors, managers, officers, principals, advisory board members, controlling persons, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives.

**1.102** **"Scheduled"** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

14

**1.103** **"Schedules"** means the schedules of assets and liabilities filed in the Bankruptcy Court by the Debtors, as such schedules have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.104** **"Section 503 Deadline"** shall have the meaning ascribed thereto in Section 2.3 of the Plan.

**1.105** **"Secured Claim"** means a Claim secured by a properly perfected and unavoidable security interest in or lien upon property of the Estates to the extent of the value of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Claimholder. Without limiting the generality of the foregoing, the DIP Facility Claim, the Prepetition Revolving Secured Claim and the Prepetition Term Secured Claim shall be deemed to be a Secured Claim to the extent of the value of the property of the Estates that secure such Claim.

**1.106** **"Secured Creditor"** means any Creditor that holds a Secured Claim.

**1.107** **"Sponsor"** means Sun Capital Partners, Inc., Sun Capital Partners IV, L.P.; Sun Capital Partners V, L.P.; Sun Mod Fashions IV, LLC; Sun Mod Fashions V, LLC; and Sun Capital Partners V, L.P.

**1.108** **"Subordinated Claim"** means, collectively, any Non-Compensatory Penalty Claim and any other Claim that is subordinated to General Unsecured Claims pursuant to Section 510 of the Bankruptcy Code.

**1.109** **"Subsequent Distribution Date"** means any date, as determined by the Plan Trustee which is after the First Distribution Date and prior to the Final Distribution Date, on which the Plan Trustee commences a Distribution to Holders of Allowed Claims pursuant to the Plan.

**1.110** **"Tax Refunds"** means the Claim of a Debtor for a refund of state or federal income taxes other than any refund of state income taxes received by a Debtor prior to the Petition Date.

**1.111** **"Third Party Claim"** means a claim that is an Avoidance Action or other Cause of Action of one or more Debtors as of the Effective Date against any Person not otherwise released under a prior Order of the Bankruptcy Court or under the Plan. For the avoidance of doubt, the Comenity Action is a Third Party Claim.

**1.112** **"Unimpaired"** refers to any Claim or Interest which is not Impaired.

**1.113** **"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

15

**1.114** **"WARN Action"** means the adversary proceeding commenced against the Debtors in the Bankruptcy Court bearing Adversary Proceeding No. 17-50005 (KJC) and any substitute or successor action.

## C.    Rules of Interpretation: Application of Definitions, Rules of Construction, and Computation of Time

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Schedules, and Exhibits are references to sections, schedules, and exhibits of or to the Plan.  Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan.  The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.  Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## D.    Exhibits

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article 2 above.

This Plan provides for the substantive consolidation of the Debtors.  All Allowed Claims and Interests are consolidated into the Classes set forth below.

16

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING STATUS |
|---|---|---|---|
| Unclassified | DIP Claims | Unimpaired | Not entitled to vote |
| Unclassified | Administrative Claims | Unimpaired | Not entitled to vote |
| Unclassified | Professional Fee Claims | Unimpaired | Not entitled to vote |
| Unclassified | Priority Tax Claims | Unimpaired | Not entitled to vote |
| Class 1 | Prepetition Revolving Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Prepetition Term Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 3 | Liberty Mutual Secured Claim | Impaired | Entitled to Vote |
| Class 4 | Miscellaneous Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 5 | Priority WARN Claim | Impaired | Entitled to Vote |
| Class 6 | Priority Non-Tax Claims | Impaired | Entitled to Vote |
| Class 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Subordinated Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 9 | Interests | Impaired | Not entitled to vote (deemed to reject) |

## ARTICLE III
## DENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**3.1    Unimpaired Classes of Claims.**  Class 1 Prepetition Revolving Secured Claims, Class 2 Prepetition Term Secured Claims and Class 4 Miscellaneous Secured Claims are not Impaired by the Plan and are deemed to have accepted the Plan.

**3.2    Impaired Classes of Claims Entitled to Vote**.  Class 3 Liberty Mutual Secured Claim, Class 5 Priority WARN Claim, Class 6 Priority Non-Tax Claims and Class 7 General Unsecured Claims are Impaired under the Plan and are entitled to vote on the Plan.

**3.3    Impaired Classes of Claims and Interests Deemed to Have Rejected the Plan.**  Class 8 Subordinated Claims and Class 9 Interests are Impaired under the Plan, shall receive no Distributions under the Plan on account of their Interests and are deemed to have rejected the Plan.

17

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

**4.1     DIP Facility Claim.**  The DIP Facility has been indefeasibly paid in full in cash, and the DIP Agent and DIP Lender have no Claims against the Debtors or the Debtors' Assets.

**4.2     Administrative Claims - Professional Claims.**

(a)     <u>Final Professional Fee Applications</u>.  All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code must be made by application Filed with the Bankruptcy Court and served on counsel to the Debtors, counsel to the Creditors' Committee, counsel to the Plan Trustee, and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the **"Professional Fee Claim Bar Date"**). Objections to such applications must be Filed and served on counsel to the Debtors, counsel to the Plan Trustee, counsel to the Creditors' Committee, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is fifteen (15) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional).

(b)     <u>Payment of Interim Amounts</u>.  The provisions of the Professional Fee Order shall remain in effect as to amounts owing to Professionals prior to the Effective Date.

(c)     <u>Payment of Professional Fee Claims</u>.  All Professional Fee Claims shall be paid from the Professional Fee Claim Escrow to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Debtors shall fully fund the Professional Fee Claim Escrow in an amount that is agreed upon by the Debtors and the Creditors' Committee prior to the Effective Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Creditors' Committee are unable to agree on an amount by which the Professional Fee Claim Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Claim Escrow. Any excess funds in the Professional Fee Claim Escrow shall be released to the Plan Trustee to be used for other purposes consistent with the Plan.

(d)     <u>Post-Effective Date Services</u>.  After the Effective Date, any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  The Plan Trustee shall pay any Professionals for Post-Effective Date services requested by the Plan Trustee.

**4.3     Administrative Claims - Substantial Contribution Compensation and Expenses Bar Date.**     Any  person  or  entity  who  requests  compensation  or  expense

18

reimbursement for making a substantial contribution ("**Substantial Contribution Claim**") in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court on or before a date that is thirty (30) days subsequent to the Effective Date (the "**Section 503 Deadline**") and serve such application on counsel for the Plan Trustee and on all other parties as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Section 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement. All Allowed Substantial Contribution Claims shall be paid by the Plan Trustee from the Available Cash within thirty (30) days of allowance by the Bankruptcy Court.

       **4.4**       **Administrative Claims – Allowed Section 503(b)(9) Claims.** Allowed Section 503(b)(9) Claims shall be paid in full in Cash by the Plan Trustee from the Available Cash as soon as reasonably practicable after the Effective Date.

       **4.5**       **Administrative Claims – Allowed Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code.** Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full in Cash by the Plan Trustee from the Available Cash as soon as reasonably practicable after the Effective Date.

       **4.6**       **Other Administrative Claims Bar Date.** All requests for payment of an Administrative Claim other than Professional Fee Claims, DIP Facility Claims, Administrative Tax Claims under sections 503(b)(1)(B) and (C) of the Bankruptcy Code, amounts owed to the U.S. Trustee, Substantial Contribution Claims and Section 503(b)(9) Claims must be filed with the Bankruptcy Court and served on counsel to the Plan Trustee no later than thirty (30) days after the Effective Date. Unless the Plan Trustee objects to an Administrative Claim on or prior to the Claims Objection Deadline (subject to extension by consent or court order) such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. All such Allowed Administrative Claims shall be paid in full in Cash by the Plan Trustee from Available Cash as soon as reasonably practicable after the Effective Date.

       **4.7**       **Priority Tax Claims.** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Trustee from the Available Cash, at the Plan Trustee's option, as follows: (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding three (3) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Trustee shall have agreed upon in writing.

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1    Class 1 (Prepetition Revolving Secured Claim)**. The holder of the Prepetition Revolving Secured Claim was paid in full, in Cash, prior to the Petition Date. The holder of the Prepetition Revolving Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan.

**5.2    Class 2 (Prepetition Term Secured Claim)**. The holder of the Prepetition Term Secured Claim was indefeasibly paid in full, in Cash, by the Debtors. The holder of the Prepetition Term Secured Claim has no further Claim against the Debtors and will not receive any Distributions under the Plan.

**5.3    Class 3 (Liberty Mutual Secured Claims)**. Except to the extent that a holder of an Allowed Class 3 Liberty Mutual Secured Claim agrees to a less favorable treatment, as a compromise with respect to Liberty Mutual Secured Claim and the in full satisfaction of the Liberty Mutual Secured Claim, Liberty Mutual shall receive agreed sum agreed among the Debtors, Plan Trustee and Liberty Mutual from the Cash held by Liberty Mutual to collateralize the Liberty Mutual Secured Claim and the balance of such Cash held by Liberty Mutual shall be paid to the Plan Trustee.

**5.4    Class 4 (Miscellaneous Secured Claims)**. Except to the extent that a holder of an Allowed Class 4 Claim agrees to a less favorable treatment, the holder of each Allowed Class 4 Claim shall receive at the discretion of the Plan Trustee:  (i) Cash from the Available Cash in an amount equal to the lesser of (a) the amount of Allowed Secured Claim and (b) the value of the Debtors' property securing such Allowed Secured Claim currently in the possession of the Debtors or Plan Trust minus the amount of claims secured by such property with legal priority senior to the lien priority of the holder of such Allowed Class 4 Claim; (ii) delivery of the property securing such Allowed Class 4 Claim; or (iii) other treatment such that the Allowed Class 4 Claim shall be rendered Unimpaired.  Any Allowed Deficiency Claim of a holder of an Allowed Class 4 Claim shall be treated as a Class 7 General Unsecured Claim.

**5.5    Class 5 (Priority WARN Claims)**. Except to the extent that a holder of Class 5 Priority WARN Claim agrees to a less favorable treatment, in full satisfaction of any and all Priority WARN Claims, the holder of each Class 5 Priority WARN Claim shall receive after payment of all Allowed Administrative Claims, including Professional Fee Claims, Allowed Claims in Class 1, Class 2, Class 3, and Class 4, its Pro Rata share of Cash from the Available Cash in the amount of $810,625.00, consistent with the settlement reached between the Debtors and holders of Priority WARN Claims that will be subject of a separate motion under Bankruptcy Rule 9019 filed with the Bankruptcy Court.

**5.6    Class 6 (Priority Non-Tax Claims)**. Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of such Allowed Priority Non-Tax Claim shall either: (a) be paid in full in Cash to the extent that there is sufficient Available Cash to pay such Allowed Priority Non-Tax Claims in full after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5; or (b) to the extent

20

that there are not sufficient Available Cash or Plan Trust Assets to pay Allowed Priority Non-Tax Claims in full, each holder of such Allowed Priority Non-Tax Claim shall receive its Pro Rata share of the Available Cash after payment in full of all Allowed Administrative Claims, including Professional Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5.  Allowed Priority Non-Tax Claims shall be paid as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed Priority Non-Tax Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan.

**5.7    Class 7 (General Unsecured Claims).**  Except to the extent that a holder of an Allowed Class 7 General Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed Class 7 General Unsecured Claim shall receive its Pro Rata share of Plan Trust Interests after payment in full of (or reserve for) Plan Trust Expenses, all Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6.  Distributions on Account of Allowed Class 7 General Unsecured Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed General Unsecured Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan and Plan Trust Agreement.  For avoidance of doubt, the holders of Priority WARN Claims shall not hold a Class 7 General Unsecured Claims and shall receive no distribution on account of any Class 7 General Unsecured Claims.

**5.8    Class 8 (Subordinated Claims).**  The holders of Allowed Class 8 Subordinated Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan, on account of such Subordinated Claims.

**5.9    Class 9 (Interests).**  The holders of Interests in Class 9 shall have their Interests against the Debtors extinguished as of the Effective Date and shall receive no Distributions under this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

After the Effective Date, the Plan will be implemented by, among other things, the establishment of the Plan Trust, and the making of Distributions by the Plan Trustee in accordance with the Plan.

**6.1    The Plan Trust.**

(a)    <u>Creation and Governance of the Plan Trust</u>.  On the Effective Date, the Debtors and the Plan Trustee shall execute the Plan Trust Agreement and shall take all steps necessary to establish the Plan Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Plan Trust Beneficiaries.  Additionally, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Plan Trust all rights, title, and interest in and to all of the Plan Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Plan Trust Assets shall automatically vest in the Plan

21

Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Plan Trust Interests and the Plan Trust Expenses, as provided for in the Plan Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Plan Trustee shall be the exclusive trustee of the Plan Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Plan Trust Assets.  The Plan Trust shall be governed by the Plan Trust Agreement and administered by the Plan Trustee.  The powers, rights, and responsibilities of the Plan Trustee shall be specified in the Plan Trust Agreement. The Plan Trust shall hold and distribute the Plan Trust Assets in accordance with the provisions of the Plan and the Plan Trust Agreement.  Other rights and duties of the Plan Trustee and the Plan Trust Beneficiaries shall be as set forth in the Plan Trust Agreement.  After the Effective Date, the Debtors shall have no interest in the Plan Trust Assets.

(b)     Purpose of the Plan Trust.  The Plan Trust shall be established for the purpose of pursuing or liquidating the Plan Trust Assets, winding down the remaining affairs of the Debtors (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtors), reconciling and objecting to Claims, seeking approval of the settlement of the WARN Action and, if necessary, defending the WARN Action, prosecuting Third Party Claims and making Distributions to holders of Allowed Claims, other than Professional Fee Claims, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)     Authority. The Plan Trustee shall have the sole authority and right on behalf of each of the Debtors, and their respective Estates, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including to:

(i)     review, reconcile, compromise, settle, or object to Administrative Claims, Priority Tax Claims and Claims in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6 and Class 7, pursue approval of the settlement of the WARN Action, or defend the WARN Action, if necessary, and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(ii)     calculate the amount of Distributions to be made to holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 in accordance with the Plan, and use Available Cash from the Plan Trust Assets to make such Distributions to the Holders of such Allowed Claims in accordance with the Plan;

(iii)     review, reconcile, enforce, collect, compromise, settle, or elect not to pursue any or all Third Party Claims or similar actions, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(iv)     maintain, conserve, supervise, prosecute, collect, settle, and protect the Plan Trust Assets (subject to the limitations described herein);

22

(v)      wind down of the remaining affairs of the Debtors (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtors);

(vi)     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law;

(vii)    file any and all tax returns for the Debtors and the Estates, as applicable, provided however, the Plan Trustee shall have no personal liability for the signing or accuracy of the Debtors' tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, which shall be limited solely to the Plan Trust Assets;

(viii)   take such actions as are necessary or appropriate to close or dismiss any or all of the Chapter 11 Cases;

(ix)     execute any and all documents and instruments necessary to effectuate the provisions of the Plan;

(x)      hold the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries and act in the best interests of the Plan Trust Beneficiaries; and

(xi)     market, sell, lease, abandon or otherwise dispose of or realize the value of the Plan Trust Assets.

(d)      Powers of the Plan Trustee.  The Plan Trustee shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Bankruptcy Cases solely with respect to the purposes of the Plan Trust set forth in Section 6.3(b) and (c) of the Plan, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, and is appointed as the representative of the Estates solely for the purposes set forth in Section 6.3(b) and (c) of the Plan.  Solely with respect to the purposes of the Plan Trust set forth in Section 6.3(b) and (c) of the Plan, the Plan Trustee may exercise all power and authority that may be exercised by any officer, director or holder of an Interest in the Debtors with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors or holders of Interests.

(e)      Employment, Indemnification and Other Agreements.  The Plan Trustee may enter into employment, indemnification and other agreements with individuals who may be required to assist the Plan Trustee after the Effective Date.  Such agreements, in addition to director and officer liability policies and other insurance policies, shall remain in place after the Effective Date until such time as the Plan Trustee shall determine to either terminate or amend such agreements.

(f)      Plan Trustee and Plan Trust Agreement.

(I)      The Plan Trust Agreement generally will provide for, among other things:

(i)      the payment of the Plan Trust Expenses to the extent of Available Cash;

23

(ii)     the payment of other reasonable expenses of the Plan Trust;

(iii)    the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation without Bankruptcy Court approval;

(iv)     the investment of Cash by the Plan Trustee within certain limitations, including those specified in the Plan;

(v)      the orderly collection and liquidation of the Plan Trust Assets;

(vi)     litigation of any Third Party Claims, which may include the pursuit, commencement, prosecution, settlement, release, waiver, abandonment, or dismissal of any such Third Party Claims;

(vii)    the making of Distributions under this Plan and under the Plan Trust Agreement to holders of Allowed Claims;

(viii)   the pursuit of objections to, and estimations and settlements of Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, and Claims in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6 and Class 7; and

(ix)     the abandonment, in any commercially reasonable manner, of any Plan Trust Assets that, in the Plan Trustee's reasonable judgment, cannot be sold in a commercially reasonable manner or that the Plan Trustee believes in good faith have inconsequential value to the Plan Trust.

(II)     The Plan Trustee shall in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Plan Trust Expenses to the extent of Available Cash.  The Plan Trust Expenses shall be payable solely from the Plan Trust Assets in accordance with the Plan and Plan Trust Agreement.  The Plan Trustee may, but shall not be obligated to, physically segregate and maintain separate accounts or sub-accounts for Plan Trust Expenses.  Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Plan Trustee to determine reserves and amounts to be paid to holders of Allowed Claims.

(III)    The Plan Trustee, on behalf of the Plan Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Creditors' Committee) to assist in carrying out its duties hereunder and under the Plan Trust Agreement and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Plan Trust Assets in accordance with the Plan and the Plan Trust Agreement at the rates agreed upon by and between the Plan Trustee and hi/her/its retained professionals.

24

(IV)    The Plan Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Plan Trust in favor of the Plan Trustee. Any such indemnification shall be the sole responsibility of the Plan Trust and payable solely from the Plan Trust Assets.

(g)    <u>Preservation of Privileges and Defenses</u>. The actions taken by the Debtors shall not be (or be deemed to be) a waiver of any privilege of the Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any document or communications (whether written or oral). Notwithstanding any Debtors providing any privileged information to the Creditors' Committee, Plan Trustee, the Plan Trust, or any party or person associated with the Plan Trust, such privileged information shall be without waiver of any privilege of the Debtors, as applicable, including any attorney-client privilege or work-product privilege whether in recognition of the joint and/or successor interest in prosecuting the Third Party Claims, the WARN Action or objections to Disputed Claims, as applicable, or otherwise, and shall remain privileged. The Plan Trustee shall have no right to waive the attorney-client privilege, work-product privilege, or other protection of information received from the Debtors. The Debtors shall retain the right to waive their own privilege.

(h)    <u>Liquidation of Assets</u>. The Plan Trustee shall pursue recovery of Plan Trust Assets under the Plan and Plan Trust in a commercially reasonable manner.

(i)    <u>Disbursing Agent</u>. The Plan Trustee shall serve as or may select an alternative disbursing agent for Allowed Claims (other than Professional Fee Claims) under the Plan.

(j)    <u>Execution of Documents</u>. The Debtors (or the Plan Trustee on behalf of the Debtors) may execute any and all documents and instruments necessary to effectuate the purposes of the Plan Trust set forth in Section 6.3(b) and (c) of the Plan.

(k)    <u>Limitation of Liability</u>. Neither the Plan Trustee, nor its firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or Plan Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. The Plan Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee. The Plan Trustee may, in connection with the performance of his, her or its functions, in the Plan Trustee's sole and absolute discretion, consult with his, her or its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, the Plan Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Plan Trustee or its members unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Plan Trustee shall look only to the Plan Trust Assets to satisfy any

25

liability incurred by the Plan Trustee to such person in carrying out the terms of the Plan or the Plan Trust Agreement, and the Plan Trustee shall have no personal obligation to satisfy such liability.

(l)      Indemnification.  The Plan Trust shall indemnify the Plan Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Plan Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Plan Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Plan Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  In addition, the Plan Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Plan Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Plan Trust or the implementation or administration of the Plan if the Plan Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Plan Trust.  To the extent the Plan Trust indemnifies and holds harmless any Plan Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Plan Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Plan Trust.  This provision shall survive the termination of the Plan Trust Agreement and the death, dissolution, liquidation, resignation, replacement, or removal of the Plan Trustee.

(m)      Insurance.  The Plan Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Plan Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Plan Trustee, which insurance coverage may, at the sole option of the Plan Trustee, be  extended for a reasonable period after the termination of the Plan Trust Agreement.

(n)      United States Federal Income Tax Treatment of the Plan Trust.  For all United States federal income tax purposes, the parties shall treat the transfer of the Plan Trust Assets to the Plan Trust as: (a) a transfer of the Plan Trust Assets directly to the applicable holders of Allowed General Unsecured Claims, followed by (b) the transfer by the holders of such Allowed General Unsecured Claims to the Plan Trust of such Plan Trust Assets in exchange for the Plan Trust Interests; provided, however, that the Plan Trust Assets will be subject to any post-Effective-Date obligations incurred by the Plan Trust relating to the pursuit of Plan Trust Assets. Accordingly, the applicable Plan Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Plan Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

26

(o)     Tax Reporting.

(I)     The Plan Trustee shall file any and all tax returns for the Debtor and Plan Trust, as applicable.

(II)    The Plan Trustee shall be responsible for payment, out of the Plan Trust Assets, of any taxes imposed on the Plan Trust or Plan Trust Assets to the extent such payment is consistent with the Bankruptcy Code, this Plan and any applicable order of the Bankruptcy Court including, but not limited to, any order establishing a Bar Date.

(III)   The Plan Trustee shall file tax returns for the Plan Trust treating the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(IV)    The Plan Trustee shall be responsible for payment, solely from the Plan Trust Assets, of all taxes (if any) imposed on the Plan Trust or its assets.

(V)     The Plan Trustee shall distribute such tax-related notices to the applicable Plan Trust Beneficiaries as the Plan Trustee determines are necessary or desirable.

(p)     Cash Investments.  The Plan Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

(q)     Dissolution of the Plan Trust.  The Plan Trustee and the Plan Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Plan Trustee determines that the pursuit of additional Third Party Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Third Party Claims, (b) all objections to Disputed Claims are fully resolved, and (c) all Distributions required to be made by the Plan Trustee to the Plan Trust Beneficiaries under the Plan and the Plan Trust Agreement have been made, but in no event shall the Plan Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Plan Trust Assets. Upon dissolution of the Plan Trust or at such earlier time as determined by the Plan Trustee in his, her or its sole discretion, any remaining Plan Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Plan Trustee to a charitable organization that the Committee shall designate by the Effective Date.

(r)     Control Provisions.  To the extent there is any inconsistency between the Plan as it relates to the Plan Trust and the Plan Trust Agreement, the Plan shall control.

27

**6.2     Transfer Taxes.**  Any transfer of the Plan Trust Assets or any portion(s) of the Plan Trust Assets pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar Taxes.

**6.3     Third Party Claims.**  Except as otherwise expressly provided in this Plan or the Plan Trust Agreement, the Plan Trustee may pursue any Third Party Claim by informal demand and/or by the commencement of litigation, but is not required to do so.  The Net Recoveries of such Third Party Claims will be added to the Plan Trust Assets and shall be distributed in accordance with this Plan and the Plan Trust Agreement.

**6.4     Effective Date.**  On the Effective Date, the Plan Trustee shall have the rights and powers set forth in Section 6.3 (c) of the Plan in order to carry out and implement the purposes and intent of the Plan.

**6.5     Records.**  The Plan Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Plan Trust Assets and objections to Disputed Claims.

**6.6     Substantial Consummation.**   The Plan shall be deemed to be substantially consummated on the first date Distributions are made in accordance with the terms of this Plan to any holders of Allowed Claims of any Class.

**6.7     Rights with Respect to Challenge Rights Order**. Nothing in the Plan, the Plan Supplement or any other Plan related document shall alter, impair or otherwise affect the Bankruptcy Court's Challenge Rights Order, which order shall remain valid and enforceable in all respects.  In the event of any inconsistency between the Plan, the Plan Supplement and/or any other Plan related document, on one hand, and the Challenge Rights Order, on the other hand, the Challenge Rights Order shall govern in all respects.

## ARTICLE VII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**7.1     Contracts and Leases.**  On the Effective Date, all Pre-Petition Date executory contracts, employment agreements and unexpired leases other than those leases and contracts that were previously assumed or rejected, except as set forth in Section 7.2 herein, shall be deemed automatically rejected as of that date or such earlier date as the Debtors may have unequivocally terminated such lease or contract.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

**7.2     Payments Related to Assumption of Executory Contracts and Unexpired Leases.**  Except with respect to executory contracts and unexpired leases assumed under the prior Court orders, to the extent not already paid prior to plan confirmation, any monetary amounts by which each executory contract and unexpired lease to be assumed may be in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Cure.  In the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of any

28

assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption and assignment.

7.3     **Rejection Damages Bar Date.**  If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Trustee or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within thirty (30) days after entry of an Order authorizing the Debtors to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 7.1 of this Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Trustee or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within thirty (30) days after the Effective Date.

7.4     **Objections to Rejection Damage Claims.**  Objections to proofs of Claim for damages resulting from rejected executory contracts or unexpired leases shall be filed by the Plan Trustee with the Bankruptcy Court any time on or prior to the Claim Objection Deadline.  Said objections shall be served upon the holder of the Claim to which such objection is made (or holder's counsel, when applicable) and any Rejection Claim that is Allowed shall be treated as an Allowed Class 7 General Unsecured Claim in accordance with this Plan.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     **Time of Distributions.**  Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, Distributions under the Plan shall be made as soon as is reasonably practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that Cash becomes available for Distribution to a particular Class pursuant to the treatment of such Class under the Plan.  The Plan Trustee shall provide for a holdback of a sufficient amount of Cash, which holdback shall be estimated to be sufficient to satisfy incurred and anticipated Plan Trust Expenses incurred by the Plan Trustee and to provide for a hold-back with respect to Disputed Claims or Plan Trust Expenses before making Distributions under this Plan.  The Plan Trustee may make additional Distributions of Cash and property received after the initial Distributions.  Such additional Distributions may be made at such times and in such amounts as determined by the Plan Trustee.

8.2     **Interest on Claims.**  Unless otherwise specifically provided for in the Plan or Confirmation Order, or as required by section 506 of the Bankruptcy Code, post-Petition Date interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

29

**8.3**     **Claims Administration Responsibility.**  The Plan Trustee shall retain sole responsibility for administering, disputing, objecting to, compromising or otherwise resolving issues related to Distributions to holders of all Claims.

**8.4**     **Tax Identification Forms from Holders of Claims.**  The Plan Trustee may require each holder of Allowed Claims to provide a current executed Form W-9, Form W-8 or similar tax form as a prerequisite to receiving a Distribution under the Plan and Plan Trust Agreement by mailing a request for such forms to all holders of Allowed Claims potentially entitled to Distribution to either (i) the address set forth on the proof(s) of claim filed by such Claimholder, (ii)  the address reflected in the Schedules if no proof of claim has been filed or (iii) the address set forth in any written notice of change of address delivered to the Plan Trustee and filed with the Bankruptcy Court.  Any holder of Allowed Claims failing to return a completed Form W-9 (or, if applicable, Form W-8) to the Plan Trustee within 60 days of the Plan Trustee's request (or within any further time period expressly agreed to in writing between the Plan Trustee and such holder of Allowed Claims), shall be deemed to have forfeited their respective rights to any current, reserved or future Distributions provided for under the Plan and such Allowed Claim shall be expunged without further order of the Bankruptcy Court.  Any such forfeited Distribution shall be deemed to have reverted back to the Plan Trust for all purposes, including for Distributions to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

**8.5**     **Withholding, Payment and Reporting Requirements Regarding Distributions.**  All Distributions under the Plan and Plan Trust Agreement shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment and reporting requirements.  The Plan Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements including requiring each Claimholder to provide a completed Form W-9 (or, if applicable, Form W-8) as set forth in Section 8.4 of this Plan.  Notwithstanding any other provision of the Plan, (i) each Claimholder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by a governmental unit, including income, withholding and other tax obligations on account of such Distribution, and including, in the case of a holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Debtors or Plan Trust, as applicable, in connection with such Distribution, and (ii) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Plan Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**8.6**     **Distribution to General Unsecured Creditors.**  The Plan Trustee shall make Distributions to Allowed Class 7 General Unsecured Claims, after satisfaction of the Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5 and Class 6 as required by the Plan and setting aside the Distribution Reserve and a reserve for Plan Trust Expenses, from the remaining Plan Trust Assets.

**8.7    Procedures for Treating and Resolving Disputed Claims.    No Distributions Pending Allowance**    Except as set forth in Section 8.7(c) of this Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim. All objections to Disputed Claims shall be filed by the Plan Trustee on or before the Claim Objection Deadline, unless such time period is extended by the Bankruptcy Court.

(a)    <u>Distribution Reserve</u>.    The Plan Trustee will withhold the Distribution Reserve from the property to be distributed under the Plan to Claimholders. The Plan Trustee may request estimation for any Disputed Claim that is contingent or unliquidated, and the Plan Trustee will withhold the Distribution Reserve based upon the estimated amount of each such Claim as determined by the Bankruptcy Court. If the Plan Trustee elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Plan Trustee will withhold the Distribution Reserve based upon the appropriate Pro Rata percentage Distribution of the Face Amount of such Claim.

(b)    <u>Distributions After Allowance</u>.    Payments and Distributions from the Distribution Reserve on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern the Class in which such Claim is classified. As soon as reasonably practicable after the date when the order or judgment of the Bankruptcy Court allowing all or part of such Claim becomes a Final Order, the Plan Trustee shall distribute to the holder of such Claim any Cash allocated to such Claim in the Distribution Reserve that would have been distributed on the dates Distributions were previously made on account of Allowed Claims had such Claim been an Allowed Claim on such dates. All Distributions made under this Section of the Plan on account of an Allowed Claim shall be made as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Claims.

(c)    <u>Claims Allowable Against Multiple Debtors</u>.    Notwithstanding anything herein or in the Schedules to the contrary, to the extent a Claimholder has a Claim that is an Allowed Claim against more than one of the Debtors based upon the same ground or theory of liability, such Claim shall only be counted once for determination of Distributions under the Plan.

**8.8    Delivery of Distributions.**    Distributions to holders of Allowed Claims, other than Professional Fee Claims, shall be delivered by the Plan Trustee (a) to the addresses set forth on the proofs of claim filed by such Claimholders (or the address reflected in the Schedules if no proof of claim is filed), (b) to the addresses set forth in any written notices of address changes delivered to the Plan Trustee and filed with the Bankruptcy Court after the date of any related proof of claim, or (c) in the case of a Claimholder whose Claim is governed by an agreement and is administered by an agent or servicer, to the agent or servicer which shall then be responsible for making delivery of the Distribution to such Claimholder.

**8.9    Uncashed Checks.**    Cash payments in the form of checks shall be null and void if not cashed within sixty (60) calendar days after the date of issuance. Distributions in respect of such voided checks shall be treated as unclaimed or undeliverable Distributions as

31

provided in Section 8.10 of the Plan. Requests for reissuance of any check must be made in writing to the Plan Trustee by the Claimholder that originally was issued such check, which request shall be made within sixty (60) calendar days after the date of issuance thereof.

**8.10     Unclaimed or Undeliverable Distributions.** If the Distribution of any Claimholder, other than Professional Fee Claims, is returned as undeliverable, no further Distributions to such Claimholder shall be made unless and until the Plan Trustee, as applicable, is notified of such Claimholder's then-current address, *provided*, *however*, that unless a Claimholder asserts a claim for an undeliverable Distribution within 60 days after such Distribution is returned as undeliverable, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in the Plan Trust automatically and without any need for further order by the Bankruptcy Court for all purposes, including for redistribution to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary. If a Claimholder timely provides the Plan Trustee the necessary information within the period specified herein, all missed Distributions shall be made to the Claimholder as soon as is practicable, without interest.

**8.11     Minimum Distribution**. Notwithstanding any other provision of the Plan, the Plan Trustee, or other disbursing agent will not be required to make Distributions of Cash less than $50.00 in value.

**8.12     Manner of Payment Under this Plan**. The Cash Distributions made pursuant to this Plan shall be made by checks drawn on domestic banks selected by the Plan Trustee, or in the Plan Trustee's sole discretion, by wire transfer from a domestic bank selected by the Plan Trustee.

**8.13     Post-Final Distribution Assets**. Any assets received by the Plan Trustee after the final Distribution is made shall be distributed Pro Rata to the holders of Allowed Class 7 General Unsecured Claims unless the Plan Trustee determines, in his, her or its sole discretion, that the remaining Plan Trust Assets are insufficient or it is otherwise impracticable to make any further or supplemental Distribution.

## ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

**9.1     Compromise and Settlement of Claims, Interests and Controversies.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim and (b) a good faith compromise of all Claims and Causes of Action the Debtors, Creditors' Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors,

32

their Estates and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Trustee may compromise and settle Claims against the Debtors, Causes of Action against other Entities and Third Party Claims against other Entities.

**9.2    Release of Liens.** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the relevant Estates and its successors and assigns.

**9.3    Releases by the Debtors. EFFECTIVE AS OF THE EFFECTIVE DATE OF THE PLAN, PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED AND ACQUITTED BY EACH AND ALL OF THE DEBTORS AND THE DEBTORS' ESTATES FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF EACH AND ALL OF THE DEBTORS OR THE DEBTORS' ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT EACH AND ALL OF THE DEBTORS OR THE DEBTORS' ESTATES (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY OR ALL OF THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR PERFORMANCE OF THE DIP FACILITY, THE ASSET SALE, THE PLAN, THE DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE**

33

A172

**DEBTORS** OR THE DEBTORS' **ESTATES**, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

**9.4     Releases by Holders.  SUBJECT TO THE RIGHT OF EACH HOLDER OF A CLAIM AGAINST THE DEBTOR TO AFFIRMATIVELY 'OPT OUT" OF THE RELEASE SET FORTH BELOW BY NOTING SUCH "OPT OUT" ELECTION ON THE BALLOT TO VOTE ON THE PLAN, AS OF THE EFFECTIVE DATE OF THE PLAN, EACH AND ALL OF THE RELEASING PARTIES SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE AND ACQUITTED EACH AND ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY OR ALL OF THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE DIP FACILITY, THE ASSET SALE, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTORS OR THE DEBTORS' ESTATES, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

**9.5     Liabilities to, and Rights of, Governmental Units.**  Nothing in the Plan or Confirmation Order shall release, or preclude:  (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Plan Trustee; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability.  Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  The injunction provisions contained in the Plan and

34

Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

**9.6    Exculpation.   EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE <u>PLAN</u>, NO <u>EXCULPATED PARTY</u> SHALL HAVE OR INCUR, AND EACH <u>EXCULPATED PARTY</u> IS HEREBY RELEASED AND EXCULPATED FROM ANY <u>EXCULPATED CLAIM</u>, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY <u>EXCULPATED CLAIM</u>, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE <u>PLAN</u>. THE <u>DEBTORS</u> (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE <u>BANKRUPTCY CODE</u> WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF <u>ESTATE ASSETS</u> TO THE <u>PLAN TRUST</u> PURSUANT TO THE <u>PLAN</u> AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE <u>PLAN</u> OR THE TRANSFER OF <u>ESTATE ASSETS</u> PURSUANT TO THE PLAN.**

**9.7    Injunction.   FROM AND AFTER THE <u>EFFECTIVE DATE</u>, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE <u>PLAN</u> OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE <u>PLAN</u> OR THE <u>CONFIRMATION ORDER</u>. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE <u>PLAN</u> OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE <u>PLAN</u>, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD <u>CLAIMS</u> OR <u>INTERESTS</u> THAT HAVE BEEN RELEASED PURSUANT TO SECTION 9.3 OR SECTION 9.4, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.6 ARE PERMANENTLY ENJOINED, FROM AND AFTER THE <u>EFFECTIVE DATE</u>, FROM TAKING ANY OF THE FOLLOWING ACTIONS:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH <u>CLAIMS</u> OR <u>INTERESTS</u>; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH <u>CLAIMS</u> OR <u>INTERESTS</u>; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR <u>ESTATES</u> OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH <u>CLAIMS</u> OR <u>INTERESTS</u>; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION**

35

DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIMS OR INTERESTS OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

9.8     FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS ARTICLE IX, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX OF THE PLAN.

9.9     THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, OR ESTATE ASSETS.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED.

9.10    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

9.11    ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE CREDITORS' COMMITTEE THE PLAN TRUSTEE, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.  WITHOUT

36

**LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE <u>EFFECTIVE DATE</u>, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE <u>BANKRUPTCY COURT</u>, A <u>CLAIM</u> MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE <u>BANKRUPTCY COURT</u> OR THE CONSENT OF THE <u>PLAN TRUSTEE</u>. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED <u>CLAIM</u> FILED SHALL BE DEEMED <u>DISALLOWED</u> IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE <u>BANKRUPTCY COURT</u>.**

9.12    **Term of Injunctions or Stays.** Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.13    **Compromises and Settlements**. Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims against them, and (b) claims that they have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle up to and including the Effective Date, Claims against them and claims that they may have against other Persons. After the Effective Date, such right shall pass exclusively to the Plan Trustee to which such claims shall be conveyed pursuant to the Plan, including in accordance with Section 9.1 of the Plan.

9.14    **Cancellation of Agreements**. On the Effective Date, except to the extent of a right to receive a Distribution under this Plan and as otherwise provided herein, any note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed automatically cancelled; *provided, however*, that each agreement that governs the rights of the Claimholder and that is administered by an agent or a servicer, shall continue in effect solely for the purposes of allowing such agent or servicer to make the Distributions to be made on account of such Claims or Interests under the Plan.

9.15    **Objections to Claims**. The failure by the Debtors or the Plan Trustee to object to, or examine, any Claim or Interest for purposes of voting shall not be deemed a waiver of any such entities' right to object to (to the extent of any Claim that is not expressly Allowed in the Plan) or reexamine the Claim or Interest in whole or in part for any other purpose, including, but not limited to, distribution of property.

9.16    **Setoff**. Notwithstanding anything herein, in no event shall any Claimholder be entitled to setoff any Claim against any claim, right, or cause of action of the Debtors, unless such Claimholder preserves its right to set off by (i) including in a timely-filed proof of claim that it intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise or (ii) filing a motion for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date).

37

## ARTICLE X
## CONDITIONS PRECEDENT

**10.1**    **Conditions to Confirmation**.  The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a)    The Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtors in consultation with the Creditors' Committee;

(b)    The Plan Supplement shall have been filed (including the Plan Trust Agreement in form and substance reasonably acceptable to the Creditors' Committee and the Debtors); and

(c)    The Plan Trustee shall have been selected and shall have indicated his or her agreement to serve under the terms of the Plan and the Plan Trust Agreement.

**10.2**    **Conditions to Effective Date**.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a)    The Confirmation Order shall have been entered by the Bankruptcy Court and such Confirmation Order has become a Final Order (unless the Final Order requirement is waived by the Debtors and the Creditors' Committee);

(b)    No stay shall be in effect with respect to the Confirmation Order; and

(c)    The Plan Trust Agreement has been fully executed.

**10.3**    **Waiver of Conditions to Confirmation and Effective Date.**  The conditions set forth in Sections 10.1 and 10.2 of the Plan may be waived by the Debtors the Creditors' Committee, without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors and the Creditors' Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors and the Creditors' Committee).  The failure of the Debtors or the Creditors' Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1**    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among other things, the following matters:

38

(a)     to hear and determine pending motions for the assumption and assignment of or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the amount of Cure, if any, required to be paid in connection with such assumption and assignment;

(b)     to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan, including, without limitation, any actions to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable contract provisions, the provisions of this Plan or under applicable provisions of the Bankruptcy Code or any other federal, state or local laws;

(c)     to ensure that Distributions to Allowed Claimholders are accomplished as provided herein;

(d)     to hear and determine any and all objections to the allowance or estimation of Claims filed both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim in whole or in part;

(e)     to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(f)     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan or regarding the rights of the Plan Trustee;

(h)     to issue orders in aid of execution, implementation or consummation of the Plan;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(k)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     to hear any other matter not inconsistent with the Bankruptcy Code;

39

A178

(m)    to hear and determine all disputes involving the existence, nature or scope of the releases provided for in the Plan;

(n)    to hear and determine any Claims of or against the Debtors;

(o)    to enforce all orders previously entered by the Bankruptcy Court; and

(p)    to enter a Final Decree closing the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to hear and determine disputes concerning Claims, Interests, Avoidance Actions, Third Party Claims and any motions to compromise or settle such disputes. Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Plan Trustee chooses to pursue any Third Party Claim in another court of competent jurisdiction, the Plan Trustee will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XII
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS OR INTERESTS

**12.1    Impaired Classes of Claims and Interests Entitled to Vote**. Claimholders in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan. The Claims Agent will tabulate votes on the Plan.

**12.2    Acceptance by an Impaired Class**. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**12.3    Presumed Acceptances by Unimpaired Classes**. Class 1 Prepetition Revolving Secured Claims, Class 2 Prepetition Term Secured Claims and Class 4 Miscellaneous Secured Claims are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

**12.4    Class Deemed to Reject Plan**. Holders of Class 8 Subordinated Claims and Class 9 Interests will not receive any Distribution, are not entitled to vote on the Plan and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**12.5    Non-Consensual Confirmation**. In the event that less than all Classes entitled to vote to accept the Plan, the Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

40

A179

**12.6    Confirmability and Severability of the Plan**.    The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied.  A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1    Binding Effect**.  The Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Trustee, all present and former Claimholders, all present and former Interestholders, other parties in interest and their respective successors and assigns to the fullest extent permitted by section 1141(a) of the Bankruptcy Code.

**13.2    Modification and Amendments**.  The Debtors may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing, in consultation with the Creditors' Committee.  After the Confirmation Date and prior to the Effective Date, the Debtors, with the consent of the Creditors' Committee, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.  From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Trustee may seek non-material modification or amendment of the Plan pursuant to this paragraph.

**13.3    Creditors' Committee**. The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.  From and after the Effective Date, the Creditors' Committee shall exist for the sole purposes of: (a) matters relating to any appeals or other challenges or matters with respect to the Confirmation Order; (b) pursuing the Creditors' Committee's Professional Claims and reviewing and being heard in connection with all Professional Claims; and (c) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties.  Upon the conclusion of the foregoing duties, the Creditors' Committee shall automatically dissolve and its members, Professionals and agents shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys and other agents shall terminate. All expenses of Creditors' Committee members and the fees and expenses of their professionals through the Effective Date shall be paid in accordance with the terms and conditions of this Plan and any order of the Bankruptcy Court.

41

13.4    **Third Party Claims/Causes of Action**.  Unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, all Third Party Claims are hereby preserved for prosecution and enforcement by the Plan Trustee.  For the avoidance of doubt, neither the Debtors nor the Plan Trustee shall commence, litigate, prosecute and/or settle any Causes of Action against the Released Parties.  The Plan Trustee shall have no obligation to perform an analysis of or pursue any Third Party Claims.

13.5    **Insurance Issues.**  Nothing in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release or requires a part to opt out of any releases) alters the rights and obligations of the Debtors and the Debtors' insurers (or any of their third party administrators) under any insurance policies and any agreements related thereto or modifies the coverage provided thereunder or the terms and conditions thereof except that on and after the Effective Date, the Debtors and the Plan Trust shall become and remain jointly and severally liable for all of the Debtors' obligations under the insurance policies and agreements regardless of whether such obligations arise before or after the Effective Date.  Any such rights and obligations shall be determined under the applicable insurance policies and agreements and applicable non-bankruptcy law.

13.6    **Comenity Action Issues.**  Notwithstanding anything to the contrary in this Plan, the Disclosure Statement that preceded it, and the Confirmation Order approving the Plan, the confirmation of this Plan will have no effect on the Comenity Action, including any rights, obligations, claims, counterclaims, defenses, and appeals that have been or may be asserted in connection with the Comenity Action. Without limiting the generality of the foregoing, any transfer of the Debtors' rights to the Plan Trust in or with respect to the Comenity Action shall not deprive or affect Comenity Bank's or the Plan Trustee's claims and defenses; nor shall any setoff, recoupment, or other rights of Comenity Bank or the Plan Trustee be reduced or affected by the confirmation of this Plan.

13.7    **Substantial Consummation.**   The Plan shall be deemed to be substantially consummated on the first date Distributions are made in accordance with the terms of this Plan to any holders of Allowed Claims of any Class**.**

13.8    **Revocation, Withdrawal or Non-Consummation Right to Revoke or Withdraw**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date in consultation with the Creditors' Committee.

13.9    **Severability of Plan Provisions**.  If prior to Confirmation any term or provision of this Plan which does not govern the treatment of Claims or Interests or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such

42

holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

       **13.10**    **U.S. Trustee's Fees.**  All fees due and owing under 28 U.S.C. §1930 shall be paid on the Effective Date and thereafter, as due, until the cases are closed, converted or dismissed and final decreed, from the Plan Trust Assets.

       **13.11**    **Notices**.  Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, counsel to the Debtors, the Plan Trustee, counsel to the Plan Trustee and all persons on the Debtors' Bankruptcy Rule 2002 service list.  With the exception of the Debtors, the Plan Trustee and the United States Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Plan Trustee within thirty (30) days subsequent to the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list.  Any notice required or permitted to be provided to the Debtors, the Plan Trustee under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtors:

       LSC Wind Down, LLC
       P.O. Box 29
       New Bremen, OH 45869
       Attn: Timothy D. Boates

       *with a copy to:*

       Klehr Harrison Harvey Branzburg LLP
       919 N. Market Street, Suite 1000
       Wilmington, DE 19801
       Attn: Domenic E. Pacitti
           Michael W. Yurkewicz
       E-mail address: dpacitti@klehr.com
                 myurkewicz@klehr.com

If to the Plan Trustee:

       Kelley Drye & Warren LLP
       101 Park Avenue
       New York, NY 10178
       Attn: James S. Carr
           Kristin S. Elliott
       E-mail address: jcarr@kelleydrye.com
                 kelliott@kelleydrye.com

43

A182

- and -

Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Attn: Bradford J. Sandler
      James E. O'Neill
E-mail address: bsandler@pszjlaw.com
                jo'neill@pszjlaw.com

**13.12    Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware shall govern the construction and implementation of the Plan, any agreements, documents and instruments executed in connection with the Plan, and corporate governance matters.

**13.13    Waiver and Estoppel.**  Each Claimholder shall be deemed to have waived any right to assert that, by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, its Claim or Interest should be allowed in a certain amount, in a certain priority, secured or not subordinated if such agreement was not disclosed in the Plan, the Disclosure Statement or other papers filed with, or orders entered by, the Bankruptcy Court.

Dated: November 2, 2017          Respectfully submitted,

                                 LSC Wind Down, LLC f/k/a Limited Stores Company, LLC
                                 LS Wind Down, LLC f/k/a Limited Stores, LLC
                                 TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC

                                 By:    */s/ Timothy D. Boates*_____
                                        Timothy D. Boates
                                        Chief Restructuring Officer